[No. H011869. Sixth Dist. June 27, 1994.]

ALMA McGINTY, as Executrix, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
AVCO CORPORATION, Real Party in Interest.

COUNSEL

Cartwright, Slobodin, Bokelman, Borowsky, Wartnick, Moore & Harris, Michael B. Moore and Dennis Kruszynski for Petitioners.

No appearance for Respondent.

Irwin & Reily, David H. Reily and Janine K. Jeffery for Real Party in Interest.

OPINION

**PREMO, Acting P. J.**—Plaintiffs[1] file this petition for extraordinary relief from an order precluding them from using their expert witness and from presenting certain evidence. We find merit in the petition and will issue a peremptory writ to vacate the challenged order.

### FACTS

In this wrongful death action, petitioners assert a product liability cause of action against real party in interest, Avco Corporation (hereafter, Avco). Avco had designed and manufactured the engine of the private aircraft which crashed, killing all the occupants therein. Petitioners are the heirs of the deceased occupants.

Petitioners' expert witness, Craig Hood, is of the opinion that the engine failed because an internal bolt had malfunctioned due to stress fatigue. The bolt was unduly stressed because the connecting mechanism of which it was a part did not have a locking nut which would have prevented loosening of the bolt and consequent unacceptable tension load on it. The history of the engine design shows that at one time the design provided for a fatigue-rated bolt and a crimp nut which prevented the bolt from loosening, but the design was subsequently changed to provide for a fatigue-rated but nonlocking nut.

Hood was the expert witness for the petitioners in a similar Illinois action against Avco which also involved the crash of a different aircraft with the same engine. (Kaige v. Avco Corporation (Cir. Ct. Cook County, Ill., No. 84-L-1795), hereafter, Kaige.) The Kaige complaint alleged the same design defect described above, and also alleged that as a result of the defectively

---

[1]Plaintiffs and petitioners are: Alma McGinty, as executrix of the estate of Renato Ricci and Glenda Ricci; Ronald G. Ricci and Russell G. Ricci, minors, by and through their guardian ad litem, Alma McGinty; Venus Ricci and Eros Ricci.

designed and manufactured connecting rod bolt and nut, the nut came off and allowed the bolt to come loose and interfere with other operating engine parts. In addition, the Kaige complaint alleged that an earlier design had used a nut-locking mechanism, but the design was later modified to save money for Avco.

On September 16, 1991, the Kaige court issued a protective order to protect Avco's trade secrets. The order provided that Avco should mark all documents containing trade secrets with the legend "Privileged and Confidential," and that such documents should be used only for prosecution, defense, or settlement of the Kaige action, and could only be disclosed to attorneys for the parties, their employees, expert or consulting witnesses, and court personnel. Also, the documents were to be returned to Avco after the litigation was concluded.

The Kaige action was settled in March 1993, at which time counsel for Avco requested return of all confidential documents pursuant to the protective order.

Meanwhile, the instant action, which was filed in November 1988, was proceeding in the Santa Clara County Superior Court. The declaration of petitioners' counsel, Michael Moore, avers that after experiencing substantial difficulty locating an appropriate expert witness, he contacted Hood because Hood had previously performed consultation work for Moore in a case involving failure of nuts and bolts in a truck.

In December 1991, Hood informed Moore that he was working on the Kaige action, which was almost identical to the instant action. Hood said that with the permission of the Kaige plaintiffs' attorney, he would send pertinent information to Moore. Pursuant to such arrangement, Hood sent to Moore a number of pleadings and discovery documents from the Kaige action. These included materials which were subject to the Kaige protective order; namely, a six-volume deposition of Avco's expert, Allen Light; Hood's deposition with attached exhibits; and six Avco drawings and service instructions marked "Privileged and Confidential" involving the bolt and nut in question.

Because of the specificity of petitioners' responses to Avco's discovery requests concerning related pending cases, Avco's counsel deduced that petitioners' counsel must have seen privileged information from the Kaige case. Avco's counsel demanded inspection of that information in a letter dated July 8, 1993, which he sent to Moore. Moore claims that this letter was the first notice to him or any other petitioners' counsel that there was a protective order in the Kaige litigation.

Contacted by Moore, Hood denied having disclosed any protective information deliberately.

Avco filed motions for sanctions in both the Illinois court (where the Kaige action had already been settled) and the Santa Clara County Superior Court.

The sanctions sought in the Kaige action included return of all privileged information to Avco; enjoining all recipients of such information from using it; enjoining Hood and others from testifying against Avco in any other litigation; and attorney fees and costs. However, by the time the Illinois court ruled on the motion, the Santa Clara court had already ruled here, and the Kaige action had already been settled. Apparently perceiving that the motion in the Kaige action had no real significance, the Illinois court, in its order of October 25, 1993, limited its ruling to ordering return of the privileged documents.

The Santa Clara County Superior Court ruled that the protected material must be returned to Avco, and that Hood is disqualified from acting as an expert in the case. The court denied Avco's motion to disqualify counsel.

### CONTENTS

Petitioners contend that the inevitable result of the sanction order, in addition to its explicit effect, is to prevent any meaningful further discovery by them because they were compelled to return the protected materials and will probably not be allowed to discover them later, as a necessarily implied part of the sanction.

Petitioners argue that they are entitled to these materials in any event (possibly subject to a protective order similar to that used in Kaige) and that they had already requested for them, in a general way, long before Hood sent the materials to Moore. Petitioners point out that in February 1992, they had demanded inspection of documents relating to the past and current designs of the rod component of the engine, including the original and all subsequent versions of specifications, designs, and drawings. They had also asked for the depositions of current and past officers or employees of Avco in any similar pending lawsuits. Petitioners claim that the deposition of Light and the information showing the design changes fall into this general category. Avco did not respond to this request, and petitioners filed a motion to compel responses on March 29, 1993. The court granted petitioners' motion and awarded sanctions.

Petitioners also assert that Avco cannot show that petitioners have obtained unfair litigation advantage from coming into possession of the privileged information because petitioners had asked for, and were entitled to, the

information about the design of the defective part; and they had already known Hood and had hired him long before the disclosure transpired. Therefore, petitioners argue, sanctions are not warranted; and certainly not the draconian sanctions of depriving them of (1) the only expert witness who will help their case, and (2) the relevant information as to the history of the allegedly defective engine part which caused the crash.

Petitioners also point out the considerable evidence that there was no wrongdoing on Moore's part and that he is innocent and therefore not subject to sanctions. This evidence includes the fact that the gummed label mentioning the protective order which should have been attached to the six volumes of the Light deposition was not there; that no one ever told Moore about the protective order in Kaige; and that these materials were part of a voluminous supply of data, such that one would not necessarily be on notice of the privileged nature of some of that data without warning and direction. Petitioners point out that the privileged Kaige documents consist of one 6-volume deposition and six drawings and service instructions out of thousands of pages of drawings and service instructions disclosed in the case which were not privileged; and although some of the privileged documents did have the word "confidential" on them, so did numerous other documents disclosed by Avco in the case as to which no protective order had ever been sought.

Another point petitioners stress is that the purpose of the privilege was to protect Avco's trade secrets, not to protect its litigating strategy. Avco's request for the protective order in the Illinois case argued only the purpose to protect trade secrets from competitors; there was no other basis for the request. Petitioners argue that the disclosure of this information to petitioners in another case did not violate the trade secret rationale for the court-imposed privilege. Avco's trade secrets are still safe from competitors and petitioners' counsel has offered to subject himself to the same protective order as in Kaige restricting disclosure to parties to the litigation.[2]

Petitioners further contend they will suffer irreparable damage if the challenged sanction stands. They argue that the engineering drawings and service instructions in issue involve successive revisions to the design of the connecting rod bolt which failed in the aircraft involved, and therefore go to the heart of petitioners' design defect and negligence causes of action. Petitioners say it will be impossible to prove their case without them. One element of petitioners' product liability action is to show the existence of an

---

[2]In their reply memorandum of points and authorities, petitioners inform this court that a stipulation to such an order was recently signed by all parties, more carefully drafted than the Kaige order, and clearly marking all privileged documents with a protective logo.

alternative feasible design for the product which would have been safer. (*Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1].) Petitioners say they cannot do this without showing that such a design not only was created but had been previously used.

Further, petitioners assert that they are severely prejudiced by the disqualification of Hood because his expertise is unique and also because, without the subject documents to review and analyze, no other expert could give a meaningful opinion as to the cause of the crash.

ISSUES

Petitioners' contentions bring up the following issues:

1.    Whether the trial court may preclude the use of a centrally important expert witness for the petitioners because that expert disclosed information to petitioners' counsel in violation of a protective order entered in another case.

2.    Whether the preclusion may extend to evidence covered by the other court's protective order but which is discoverable in the present case through normal discovery procedures.

DISCUSSION

■    There is abundant case law to the effect that the purpose of discovery sanctions "is not 'to provide a weapon for punishment, forfeiture and the avoidance of a trial on the merits,' " (*Caryl Richards, Inc.* v. *Superior Court* (1961) 188 Cal.App.2d 300, 303 [10 Cal.Rptr. 377]), but to prevent abuse of the discovery process and correct the problem presented (*Motown Record Corp.* v. *Superior Court* (1984) 155 Cal.App.3d 482 [202 Cal.Rptr. 227]; *Fred Howland Co.* v. *Superior Court* (1966) 244 Cal.App.2d 605 [53 Cal.Rptr. 341]). "One of the principal purposes of the Discovery Act . . . is to enable a party to obtain evidence in the control of his adversary in order to further the efficient, economical disposition of cases according to right and justice *on the merits*. [Citations.]" (*Caryl Richards, Inc.* v. *Superior Court, supra,* 188 Cal.App.2d at p. 303, italics in original.)

The courts therefore frown upon the extreme sanction of dismissal of a case for failure to make discovery, and recommend instead lesser sanctions of fines. (See, e.g., *Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d 771, 793 [149 Cal.Rptr. 499]; *Wilson* v. *Jefferson* (1985) 163 Cal.App.3d 952, 958 [210

Cal.Rptr. 464].) In *Deyo*, the court stated that "[t]he penalty should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery." (*Deyo* v. *Kilbourne, supra,* 84 Cal.App.3d at p. 793.) Also, ". . . the sanction should not operate in such a fashion as to put the prevailing party in a better position than he would have had if he had obtained the discovery sought and it had been completely favorable to his cause. [Citations.]" (*Ibid.*)

In the particular matter of witness or evidence preclusion sanctions, California cases have affirmed the trial court's discretion to impose such sanctions when the offender has engaged in a long history of abuse of process, but have reversed severe sanctions that are disproportionate to the sanctioned conduct.

Thus, in *Laguna Auto Body* v. *Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481, 490 [282 Cal.Rptr. 530], where the court found "continued wilful violations of the discovery statutes," the court affirmed as a discovery sanction the outright dismissal of the case. Justice Wallin dissented, stating that while he did "not condone appellants' flagrant disregard for the discovery statutes[,] . . . the dismissal of the entire action was clearly punitive and excessive," and that ". . . the trial court should have attempted monetary sanctions before resorting to dismissal." (*Id.* at p. 492.)

Likewise, in *Sauer* v. *Superior Court* (1987) 195 Cal.App.3d 213, 224-225 [240 Cal.Rptr. 489], the court affirmed an evidence preclusion sanction because of the employee's long history of " 'willful' " refusal to make discovery " 'without substantial justification.' "

In *Peat, Marwick, Mitchell & Co.* v. *Superior Court* (1988) 200 Cal.App.3d 272 [245 Cal.Rptr. 873], where the defendant accounting firm of Peat, Marwick, Mitchell & Co. (hereafter, Peat, Marwick) effected a corporate merger with the competing accounting firm of Main Hurdman, which was the People's expert witness in the pending accounting malpractice action against Peat, Marwick, the court affirmed the evidence preclusion sanction for misuse of the legal process, because "a California trial court has the inherent power to preclude evidence to cure abuses or overreaching involving confidential information, such as the merger with one's opponents' expert." (*Id.* at pp. 286-287.) The court observed that "Peat Marwick's conduct in this case . . . has seriously damaged the People's case," and that "[f]aced with this sort of abuse of the litigation process, the trial court may act to prevent the taking of an unfair advantage and to preserve the integrity of the judicial system." (*Id.* at p. 289.)

However, in sustaining the evidence preclusion sanction, the court made plain that Peat, Marwick's conduct went beyond the characterization of

" 'discovery sanction' " and was a punishment for abuse of the court's process, pure and simple. (200 Cal.App.3d at p. 286.) The court characterized the sanction imposed as the only available remedy on the facts. (*Id.* at p. 291.) It also observed that the sanction did not completely impair Peat, Marwick's ability to defend itself. (*Id.* at p. 292.)

*Peat, Marwick, Mitchell & Co.* also discussed United States Supreme Court cases which have permitted imposition of evidence preclusion sanctions on criminal defendants for failure to make discovery. (*United States* v. *Nobles* (1975) 422 U.S. 225 [45 L.Ed.2d 141, 95 S.Ct. 2160]; *Taylor* v. *Illinois* (1988) 484 U.S. 400 [98 L.Ed.2d 798, 108 S.Ct. 646].)

Another affirmance of evidence preclusion for willful failure to make discovery is *Karz* v. *Karl* (1982) 137 Cal.App.3d 637 [187 Cal.Rptr. 183].

In all of these cases, however, the common element was a continuous willful obstructive conduct by the party, or, in the case of *Peat, Marwick, Mitchell & Co.*, egregious interference with the opposing party's ability to make a case.

Here, in contrast, we have inadvertent receipt of documents in violation of a court order in a situation where the documents were legitimately discoverable by other means.

Cases which have disapproved discovery sanctions for being out of proportion to the sanctioned conduct are no less plentiful. In *Wilson* v. *Jefferson, supra*, 163 Cal.App.3d at page 958, the court reversed a sanction consisting of striking the answer and entering a default, despite a showing of a " 'continuing history of flaunting discovery requirements,' " because the penalty was found not " 'appropriate to the dereliction.' " The court observed there were many aspects of the case not connected with the dereliction, and a lesser sanction would have been appropriate.

In *People* v. *Edwards* (1993) 17 Cal.App.4th 1248 [22 Cal.Rptr.2d 3], which was a prosecution for burglary and grand theft, the defendant's defense was that there was a written partnership agreement between him and the victim and the alleged stolen properties were in fact partnership property. The court required defendant to produce the partnership agreement. When the defendant failed to do so despite repeated opportunities given to him, the court ordered preclusion of all testimony regarding the existence of the partnership. On appeal, the appellate court held that the sanction was an abuse of discretion. The court stated that preclusion sanctions are drastic and must be used sparingly. (*Id.* at p. 1261.) Although recognizing that the

United States Supreme Court permits such sanctions even in a criminal case (see *Taylor* v. *Illinois*, *supra*, 484 U.S. 400), the *Edwards* court observed that the United States high court has also said that such sanctions should be the rare case, and should not be disproportionate to the purposes the sanctions are designed to serve. (*People* v. *Edwards*, *supra*, 17 Cal.App.4th at p. 1262, citing *Michigan* v. *Lucas* (1991) 500 U.S. 145 [114 L.Ed.2d 205, 111 S.Ct. 1743].) "We interpret these authorities to instruct that preclusion sanctions may be imposed against a criminal defendant only for the most egregious discovery abuse. Specifically, such sanctions should be reserved to those cases in which the record demonstrates a willful and deliberate violation which was motivated by a desire to obtain a tactical advantage at trial such as the plan to present fabricated testimony in *Taylor*." (17 Cal.App.4th at p. 1263.)

*Edwards* also noted that the relevant factors to be considered under federal law are the effectiveness of less severe sanctions, the impact of preclusion on the evidence at trial, the extent of surprise or prejudice to the other side (the prosecutor in a criminal case) because of the objectionable conduct, and whether the violation was willful. (*People* v. *Edwards*, *supra*, 17 Cal.App.4th at p. 1264.)

In *Caryl Richards, Inc.* v. *Superior Court*, *supra*, 188 Cal.App.2d 300, the court vacated as disproportionate the sanction which struck the entire answer. In *Fabricant* v. *Superior Court* (1980) 104 Cal.App.3d 905 [163 Cal.Rptr. 894], the court vacated as excessive the monetary sanctions that were imposed for the purpose of punishment. In *Yarnell & Associates* v. *Superior Court* (1980) 106 Cal.App.3d 918 [165 Cal.Rptr. 421], a fine was reversed for being purely punitive. In *Fred Howland Co.* v. *Superior Court*, *supra*, 244 Cal.App.2d 605, where the defendant's answer was stricken, the appellate court reversed the trial court, stating that the sanction was too drastic.

We find the sanctioned conduct in this case far less offensive than any of the conduct described above, including conduct in cases where the sanction was declared to be error, because in all the foregoing cases willful failure to make discovery or the equivalent was involved, whereas here we have inadvertent receipt of documents due to someone else's violation of a court order. Also, here we have little or no prejudice to the other side, in contrast to the foregoing cases where the failure to provide evidence clearly injured the other side. There is no prejudice in this case, or, if there is, the prejudice is minimal, because the documents covered by the protective order were discoverable in any event through normal discovery channels. In fact, petitioners had already asked for them, and the court had already ordered

Avco to respond to petitioners' demand, long before Hood sent the materials to Moore.

Moreover, it cannot be said that the sanction here serves the avowed purpose of discovery sanctions generally to remedy the harm done by the objectionable conduct. The sanction here is pure punishment intended to "deter" violations of court orders, and punishment is not an appropriate aim of discovery sanctions. (*Caryl Richards, Inc.* v. *Superior Court, supra,* 188 Cal.App.2d 300; *Deyo* v. *Kilbourne, supra,* 84 Cal.App.3d 771.)

Also, the punishment puts Avco in a better position than it would have been in absent the violation, because petitioners could have obtained the materials anyway, and kept their expert, without ever having received the documents. They had already asked for the information, and the court had already compelled Avco to respond. The punishment therefore gives Avco a windfall in the litigation, which is not a legitimate goal of the discovery process.

We also agree with petitioners that the sanction imposed is arguably tantamount to dismissing petitioners' case in that if Hood is precluded from testifying and petitioners are precluded from using the evidence covered by the Kaige protective order, petitioners may be prevented from fairly presenting the merits of their case. The integrity and truth-determining function of the trial process would thus be undermined. In *People* v. *Edwards, supra,* 17 Cal.App.4th at page 1262, the court stated that " 'the potential prejudice to the truth-determining function of the trial process must also weigh in the balance. . . .' [Citation.]"

In this balancing process, we must consider that the avowed purpose of the Kaige protective order was to protect Avco's trade secrets. There is no showing that the breach of that protective order has resulted in an infringement of Avco's trade secrets. Its only effect has been to punish petitioners who have committed no wrongdoing.

On balance, we conclude that it was excessive and an abuse of discretion for the trial court to impose the preclusive witness and evidence sanction in this case for Hood's violation of the authority of another court, where no real harm has been done to Avco, and where the punishment falls most harshly not on the supposed malefactor but on the petitioners in their ability to have their case decided on the merits.

Petitioners rely heavily on the recent case of *Aerojet-General Corp.* v. *Transport Indemnity Insurance* (1993) 18 Cal.App.4th 996 [22 Cal.Rptr.2d

862]. There the trial court imposed a monetary sanction and an evidence preclusion sanction on petitioners' counsel because he was the inadvertent recipient of confidential attorney-client communications mailed to him by defense counsel. Plaintiff's counsel did not reveal his receipt of these documents and he used them to his litigating advantage. Yet the Court of Appeal reversed the monetary sanction because the attorney was guilty of no sanctionable conduct since he was not responsible for the breach of the privilege.

This case is similar to *Aerojet-General Corp.* in that in both cases the attorney received the privileged materials as part of a voluminous shipment of materials, and could not be reasonably expected to sort through it all to ascertain that he had improperly received privileged matter. Also there, as here, the sanctioned attorney was not himself guilty of misconduct; he was the inadvertent beneficiary of a breach of security elsewhere. And in both cases the information was discoverable in any event and therefore there is no real prejudice to the defendant.

Petitioners also point out that the attorney's conduct in *Aerojet-General Corp.* was more egregious than what happened here. There the attorney concealed his receipt of the information, used it, and then destroyed the documents; here counsel forthrightly admitted possession of the documents when informed of the protective order, did not destroy the documents, and says that he has returned them pursuant to the court's order.[3]

The trial court here expressed concern that the petitioners benefited from the material in that it helped them to frame more specific discovery requests to Avco, and Avco likewise argued that petitioners could not have asked specifically for the particular drawings and other documents had they not learned of their existence in an unauthorized manner. However, the attorney who drafted the specific discovery requests (Richard Cannon) denied under oath that he or his firm had relied on these documents to obtain the numbers of the requested documents, pointing out that Avco numbers its service instructions and drawings serially so that counsel knew he should ask for the next higher numbers in the series to obtain updated information.

But even if some litigating benefit were derived from the privileged information, it remains true that such a benefit does not infringe the reason for the privilege—protection of trade secrets from competitors—nor does it give petitioners anything they are not legitimately entitled to anyway. Like the Kaige petitioners, the herein petitioners are clearly entitled to the history

---

[3]In its memorandum in opposition to petitioners' petition, Avco disputes petitioners' claim that all the protected documents have been returned.

of the design of the rod and bolt that failed, as well as to an expert opinion based on that history. They are also entitled to the testimony of Avco's expert since that expert's testimony is obviously relevant to the facts to be developed as to the cause of the crash. It is unfair to deprive petitioners of this necessary information to which they are entitled simply because they acquired it through another's violation of a court order.

### DISPOSITION

Let a peremptory writ of mandate issue directing respondent superior court to set aside and vacate the challenged sanction order, and to proceed consistently with this opinion.

Elia, J., and Wunderlich, J., concurred.