Opinion
 

 PUGLIA, P. J.
 

 This appeal involves a commercial landlord tenant dispute. Plaintiffs are tenants of the Boatworks Mall, a retail shopping mall located in
 
 *1444
 
 Tahoe City. Plaintiffs commenced the underlying action in November 1993 against the owner of the mall, defendant Channel Lumber Company.
 

 In May 1994, plaintiffs filed a second amended complaint. The second amended complaint pleads separate counts for breach of contract, misrepresentation, and declaratory relief. The declaratory relief issues were severed and tried separately to the court. The breach of contract and misrepresentation claims were tried before a jury.
 

 The primary issues tendered by the breach of contract and misrepresentation counts concern common area maintenance (CAM) expenses. All of the plaintiffs operate under a triple net lease. A triple net lease is one which passes on to the tenants those costs incurred in the operation and maintenance of the premises. (See generally, Commercial Real Property Lease Practice (Cont.Ed.Bar 1976) § 1.5, pp. 4-5.) Plaintiffs’ triple net leases require they pay all of the repair and maintenance costs relating to the common areas of the mall.
 

 The lease terms provide that a tenant shall pay the percentage of total CAM expenses that its leased square footage bears to the total leaseable square footage in the mall. The total monthly CAM expenses are multiplied by a tenant’s percentage of total leasable square footage to establish the appropriate CAM charge for that tenant.
 

 Plaintiffs are billed monthly for their share of CAM expenses. Every quarter, defendant sends to plaintiffs a statement of CAM expenses, listing in general form the nature and amount of the charges.
 

 At trial, plaintiffs disputed two facets of CAM charges. First, plaintiffs argued defendant erred—either negligently or intentionally—by understating the total leaseable square footage (LSF) of the mall. As a result, plaintiffs’ CAM percentages were inflated, causing plaintiffs to pay a greater percentage of CAM expenses than called for by the leases. Plaintiffs’ second claim challenged certain CAM costs for which they had been charged. Plaintiffs claimed many of the CAM charges that appeared on their quarterly statements were for expenses incurred that were, among other things, redundant, unnecessary, or fraudulent.
 

 The jury agreed with plaintiffs. In a 56-page special verdict, the jury found for all plaintiffs on their claims of breach of contract and misrepresentation, and awarded damages based upon both understatement of LSF and charges for improper CAM expenses.
 

 On plaintiffs’ postverdict motion, the trial court concluded the damages awarded by the jury for LSF miscalculations were insufficient. The trial
 
 *1445
 
 court granted plaintiffs’ motion to vacate the judgment (Code Civ. Proc., § 663) and entered judgment increasing the damages awarded on this claim.
 

 Following the special verdict, the trial court rendered a statement of decision on the declaratory relief issues tendered by the complaint. The judgment encompasses the findings contained both in the special verdict and in the statement of decision.
 

 In the published part of this decision, we address defendant’s contention the trial court abused its discretion in imposing a discovery sanction precluding defendant from introducing certain documents at trial. We shall reject that contention even as we reject all but one of defendant’s remaining contentions in the unpublished part of this opinion. Since we agree the trial court erred in granting plaintiffs’ motion to vacate the judgment and enter a new judgment for increased damages (Code Civ. Proc., § 663), we shall order judgment entered on the special verdict of the jury.
 
 [1]
 

 I
 

 Following plaintiffs’ initial discovery request for production of documents related to CAM billings, defendant informed plaintiffs the documents were retained at defendant’s corporate headquarters in Richmond. Defendant further insisted plaintiffs travel to Richmond to inspect and copy the documents.
 

 Three of the plaintiffs, as well as their attorney, drove to Richmond, where they were met by defendant’s home office asset manager, Ed Gingrich. Gingrich escorted plaintiffs to an outside shed, where he pointed out five boxes which he claimed contained all of the documents specified in plaintiffs’ request for production. Gingrich also indicated certain contracts and checks for fiscal years 1993 and 1994 were in his office.
 

 Plaintiffs pored through all five boxes, removing any documents related to CAM expenses and billings.
 
 [2]
 
 Plaintiffs photocopied and numbered 719 documents which they later introduced in a single packet at trial as exhibit No. 9. Plaintiffs made two further written requests for production of documents, but these requests were met by assurances from the defense that all relevant documents had already been produced.
 

 Exhibit No. 9 is important not only for what it does contain, but also for what it does not contain. Within exhibit No. 9 are the invoices, records, etc.,
 
 *1446
 
 which establish many of the CAM expenses charged to plaintiffs. However, plaintiffs testified their search through the files made available to them by defendant failed to turn up a substantial number of invoices or other documentation for repairs, maintenance, and other CAM expenses. It was this lack of substantiation which formed in part the basis for plaintiffs’ claims that many of the CAM expenses for which they had been billed were either redundant, unnecessary, or fraudulent.
 

 Gingrich, called by plaintiffs as an adverse witness (Evid. Code, § 776), testified to plaintiffs’ discovery requests and the assurances he gave plaintiffs that all of the relevant CAM documents had been produced.
 

 Following eight days of trial, plaintiffs rested their case-in-chief. The following day, Gingrich took the stand on behalf of the defense to rebut plaintiffs’ claims that many of the CAM charges were either unnecessary or unfounded. Gingrich indicated he had brought with him a box of records which contained the documentation to establish the validity of all of the CAM charges for which plaintiffs had been billed. However, when Gingrich made reference to documents apparently unknown to plaintiffs, plaintiffs objected, claiming those documents had been the subject of numerous pretrial discovery requests but had not been disclosed to plaintiffs.
 

 A hearing was conducted outside the presence of the jury. At that hearing, plaintiffs noted for the trial court the three written pretrial requests for production of documents plaintiffs had tendered to defendant. Plaintiffs then presented the trial court with the written assurances they received from the defense that all relevant CAM documents had been produced, including a verification by Gingrich to this effect. Plaintiffs represented that they acceded to a request by the defense to reopen discovery in exchange for further assurances, which they received in a letter from defense counsel as well as in a verification from Gingrich, that all relevant CAM documents had been produced. Plaintiffs also represented that shortly before trial, they tendered to the defense all 719 documents they had copied from defendant’s files and again asked whether any other CAM documents were in existence, and again received assurances from the defense that there were no other documents to be discovered. Plaintiffs argued defendant’s midtrial attempt to introduce CAM documents that had not been discovered was unfair.
 

 The defense claimed there was nothing contained in the box of records Gingrich had brought to court that had not been produced and made available to plaintiffs pursuant to their requests for production of documents. Defendant maintained the problem was that plaintiffs had been selective in the documents they chose to copy from the five boxes made available to
 
 *1447
 
 them at defendant’s corporate headquarters, not that defendant had in any way inhibited or prevented plaintiffs from having access to all relevant CAM documents. Defendant denied ever assuring plaintiffs that they were in possession of all relevant CAM documents.
 

 Resolving the conflicts in the evidence, the trial court found plaintiffs’ account to be the more credible. The court found defendant had “played fast” with the discovery rules, and despite plaintiffs’ repeated requests and contrary to defendant’s repeated assurances, defendant had not made available to plaintiffs all of the relevant CAM documents. As a result, and given the late date at which the misuse of discovery procedures surfaced, the trial court concluded no other sanction would be appropriate except to preclude defendant from introducing any documents, including those brought to court by Gingrich, that had not been discovered by plaintiffs prior to trial.
 
 [3]
 

 On appeal, defendant argues the evidentiary sanction was too harsh because it precluded defendant from establishing the CAM charges disputed by plaintiffs were valid and necessary. Defendant further complains it was prejudiced because the discovery issue was played out in open court in the presence of the jury. Finally, defendant takes issue with the trial court’s finding defendant withheld relevant documents from plaintiffs. Defendant claims all of the relevant documents relating to CAM charges and billings were produced and made available to plaintiffs prior to trial. Defendant argues the fact plaintiffs elected to inspect or copy only some of the documents tendered is not a basis for a finding such documents were withheld.
 

 On appeal, defendant does not dispute that plaintiffs made three written requests for production of the relevant documents before trial. Nor does defendant dispute that in response to plaintiffs’ initial request for production of documents, defendant informed plaintiffs the documents were stored at defendant’s home office in Richmond and that plaintiffs would have to go to Richmond to inspect them. Neither does defendant dispute that plaintiffs availed themselves of this opportunity, nor that plaintiffs agreed to the defense request to reopen discovery in consideration for their assurance no other CAM documents were in existence, nor that prior to trial, plaintiffs tendered to defendant all 719 documents plaintiffs had copied at defendant’s home office and were assured by defendant that there were no other documents related to CAM billings.
 

 
 *1448
 
 Defendant argues the trial court’s ruling precluding the defense from offering relevant documentation to rebut plaintiffs’ claims that many of the CAM expenses were unnecessary or unfounded had a devastating effect on the defense. Assuming, arguendo, the documents brought to court by Gingrich would in fact have justified the CAM charges disputed by plaintiffs, we would agree the effect of the evidentiary sanction was seriously detrimental to the defense.
 
 [4]
 

 However, the issue is not whether the trial court’s evidentiary sanction impaired the defense, but whether the imposition of such a sanction was an abuse of discretion.
 
 (Young
 
 v.
 
 Rosenthal
 
 (1989) 212 Cal.App.3d 96,114 [260 Cal.Rptr. 369] [The decision whether to grant or deny a discovery sanction is within the sound discretion of the trial court, the exercise of which shall not be disturbed on appeal unless arbitrary, capricious or whimsical.].) On this record, we find no abuse of discretion. The trial court had heard plaintiffs’ testimony of their efforts to discover all of the relevant CAM documentation. Plaintiffs also produced a verification by Gingrich that all relevant documents had been produced. Finally, there was plaintiffs’ unchallenged representation that before trial they tendered to the defense all 719 documents they had copied and received from the defense assurances that there were no other CAM documents.
 
 [5]
 
 In reliance on such representations and assurances, plaintiffs went to trial and made their case accordingly.
 

 The trial court found defendant had “played fast” with the rules of discovery. The court later amplified this finding, stating its belief the defense had “played games” with plaintiffs “regarding documentation [defendant] knew or should have known was relevant to [plaintiffs’] inquiry.” The court concluded the defense had made an “absolute and deliberate attempt to thwart discovery for the purpose of gaining a tactical advantage at . . . trial.” Given the late date on which the issue arose, the trial court concluded no other sanction—i.e., monetary, continuance, etc.—would have served any useful purpose. We agree. (See
 
 Karz
 
 v.
 
 Karl
 
 (1982) 137 Cal.App.3d 637, 648-650 [187 Cal.Rptr. 183].)
 

 Defendant argues the evidentiary sanction was punitive, an improper objective for a discovery sanction. (See
 
 McGinty
 
 v.
 
 Superior Court
 
 (1994) 26 Cal.App.4th 204, 210 [31 Cal.Rptr.2d 292].) Defendant also claims the evidentiary sanction was an abuse of discretion because it placed plaintiffs in
 
 *1449
 
 a better position than they would have been had defendant properly responded to plaintiffs’ discovery requests.
 
 (Deyo
 
 v.
 
 Kilbourne
 
 (1978) 84 Cal.App.3d 771, 793 [149 Cal.Rptr. 499].)
 

 The cases relied upon by the defendant for these propositions involved misuse of discovery procedures which came to light before trial. When such misuse is discovered pretrial, the trial court has other options available to it than suppression of evidence to deal with the abuse as well as to ensure all parties receive a fair trial. (See Code Civ. Proc., § 2023, subd. (b).)
 

 Here, however, the abuse was not revealed until after the plaintiffs had completed their case-in-chief. At this late date, the evidentiary sanction imposed by the trial court was virtually the only viable option available. Since it was an appropriate means to redress the disadvantage caused plaintiff by defendant’s abuse of discovery procedures, the fact that it also had a detrimental effect on the defense was simply incidental to its proper objective.
 

 Defendant’s claim that a sanction this severe should be imposed only in cases involving continuous, willful violations misses the point. First, given •defendant’s repeated assurances that all relevant CAM documents had been produced when in fact they had not, this case does involve a continuous discovery abuse. Second, the late date at which the abuse was discovered left the trial court with no alternative but to impose an evidentiary sanction.
 

 We note, finally, the evidentiary sanction did not completely prevent defendant from defending against the challenged CAM charges. (Cf.
 
 Peat, Marwick, Mitchell & Co.
 
 v.
 
 Superior Court
 
 (1988) 200 Cal.App.3d 272, 286 [245 Cal.Rptr. 873].) Gingrich was allowed to testify all of the CAM charges contained in the quarterly CAM statements were genuine, covering expenses actually incurred in the operation of the mall. Obviously, Gingrich’s credibility was a question of fact for the jury.
 

 Defendant complains it was prejudiced because the discovery dispute was ventilated in front of the jury. Plaintiffs testified in great detail and without objection to their efforts to secure from defendant all of the relevant CAM documents. Gingrich, called as a witness pursuant to Evidence Code section 776, also testified in detail as to plaintiffs’ discovery requests before the defendant objected that the issue was one of law for the court. Having participated without objection in a full airing of the issue before the jury, defendant is in no position to complain on appeal of the procedure used.
 

 More importantly, the discussion concerning the documents Gingrich brought to court, and the entirety of the hearing on the question whether
 
 *1450
 
 defendant had abused the discovery process and the appropriate sanction to be imposed for such abuse, were conducted outside the presence of the jury.
 

 Defendant argues the trial court was without the authority to impose an evidentiary sanction because plaintiffs did not move prior to trial to compel further responses for production of documents. (See generally, Code Civ. Proc., § 2031, subd. (Ɩ).) The claim is specious. Defendant has cited no case which holds a party who has received repeated assurances that all relevant documents have been produced must nonetheless file a motion to compel further responses in order to establish a right to sanctions should it turn out the assurances were false. (See Code Civ. Proc., § 2031, subd. (Ɩ).) In fact, Code of Civil Procedure section 2031, subdivision (Ɩ), states just the opposite. It is only when responses are deemed inadequate or evasive that a motion to compel is required. (Code Civ. Proc., § 2031, subd. (Ɩ).)
 

 Plaintiffs served defendant with three separate requests for production of documents and received repeated assurances from defendant that all documents had been produced. Plaintiffs were not required to move to compel further responses as a prerequisite to invoking the trial court’s discretion in imposing a discovery sanction. (See Code Civ. Proc., § 2023, subd. (b)(3).)
 

 II-IX
 
 *
 

 The judgment is reversed to the extent of the increased LSF damages awarded plaintiffs by the trial court pursuant to plaintiffs’ motion to vacate. In all other respects, the judgment is affirmed. The matter is remanded with directions to enter judgment for damages on the jury’s special verdict. The parties shall bear their own costs on appeal.
 

 Sims, J., and Raye, J., concurred.
 

 A petition for a rehearing was denied February 4, 1997, and appellant’s petition for review by the Supreme Court was denied April 16, 1997.
 

 [1]
 

 Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II through IX.
 

 [2]
 

 Apparently these boxes also contained records for defendant’s other commercial endeavors unrelated to the mall.
 

 [3]
 

 When the jury returned to the courtroom, the court informed them they were not to consider “any documentation as substantiating any claimed expenses, save and [except] those which are admitted into evidence. There was reference to a large box of documents that purportedly justified expenses on behalf of [defendant] .... [Those documents are] not going to be admitted in evidence so [they] [do] not exist.”
 

 [4]
 

 Defendant made only a general offer of proof the documents brought to court by Gingrich in fact contained CAM invoices and billings which would rebut the plaintiffs’ claims that the CAM charges were unnecessary or bogus.
 

 [5]
 

 The defense was made aware of all of the documents in plaintiffs’ possession more than 60 days prior to trial.
 

 *
 

 See footnote 1,
 
 ante,
 
 page 1451.