Filed 9/23/25  Cox v. Sadiq CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA STATE OF CALIFORNIA

| | |
|---|---|
| KEDRIC COX, | D085012 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CIVDS2016050) |
| JAVED SADIQ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Jessica Morgan, Judge.  Affirmed.

Freeman Mathis & Gary, Christian E. Foy Nagy and Kristin A. Ingulsrud, for Defendant and Appellant.

Carpenter & Zuckerman, Gary S. Lewis and Gregory A. Coolidge, for Plaintiff and Respondent.

Kedric Cox sued Javed Sadiq for the negligent operation of his automobile in connection with a collision that left Cox with a fractured pelvis and broken forearm. A jury found Sadiq wholly at fault and awarded Cox just over $1,000,000 in damages. Sadiq challenges the trial court's exclusion of pictures of the damage to his car and evidence of Cox's blood alcohol content. He also appeals the court's orders denying his motion for a mistrial—which stemmed from improper contact his wife initiated with some of the jurors—and his motion for a new trial—which was based on this contact and on the court's exclusion of the pictures. Having determined that the court appropriately exercised its discretion in making each challenged ruling, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Late one afternoon in July 2018, Cox brought his motorcycle to a stop for a red light at a four-way, signal-controlled intersection in Rancho Cucamonga. When his light turned green, Cox drove straight into the intersection after checking that the cross-traffic he could see had stopped. A moment later, Sadiq drove his car into the intersection through an unoccupied lane in a direction of travel perpendicular to Cox's. Sadiq had fallen asleep at the wheel.

Cox, who was about to clear the intersection when he saw Sadiq, had less than a second to react. Cox's motorcycle collided with Sadiq's vehicle, causing the motorcycle to spin out from under him. He was thrown to the ground and experienced pain he described as "something . . . trying to rip [him] in half." The crash fractured his pelvis and left forearm, injuries that required multiple surgeries and months of recovery. Sadiq, who was unhurt, was jarred awake by the collision.

2

Cox sued Sadiq for negligence. During trial, Sadiq testified he did not believe that Cox shared any responsibility for the collision. A jury found Sadiq wholly at fault and awarded Cox just over $1,000,000 in damages.

## DISCUSSION

Sadiq appeals from the judgment by challenging several trial-related rulings. First, the court excluded pictures of Sadiq's car taken by his wife (Ms. Sadiq) at the scene of the crash because Sadiq failed to identify her as a percipient witness in response to one of Cox's interrogatories. Second, it also excluded expert testimony about Cox's blood alcohol content (BAC) that Sadiq wanted to use for impeachment purposes.

A third alleged error concerned reports by several jurors that Ms. Sadiq had initiated contact with them during the course of the trial. The court handled this by speaking to Ms. Sadiq and the jurors individually to assure itself that the contacts did not compromise any party's right to a fair trial. Following the court's inquiry, Sadiq moved for a mistrial, claiming that the way the court handled the matter biased the jury against him. The court denied his motion. Then, in a postverdict motion for a new trial that the court also denied, Sadiq renewed his arguments concerning the exclusion of the pictures and the court's handling of Ms. Sadiq's contact with the jurors.[1]

We review each issue for prejudicial abuse of discretion. (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 332 (*Saxena*) [evidence sanction]; *People v. Waidla* (2000) 22 Cal.4th 690, 717–718 [exclusion of evidence]; *Blumenthal*

---

[1] These rulings are reviewable on appeal from the judgment. (Code Civ. Proc., § 904.1, subd. (a)(1) [appeal from judgment]; see also *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 19 [order denying motion for new trial "may be reviewed only on appeal from the underlying judgment"].) Subsequent undesignated statutory references are to the Code of Civil Procedure.

*v. Superior Court* (137 Cal.App.4th 672, 678–679 [denial of motion for mistrial]; *Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1018 (*Crouch*) [denial of motion for new trial].) To satisfy this standard, Sadiq must (1) make " ' "a clear showing [that the court] exceeded the bounds of reason, all of the circumstances being considered" ' " and (2) demonstrate that "it is reasonably probable a more favorable result would have been reached absent the error." (*Saxena*, at p. 332.) We "review the entire record, including the evidence, and independently determine whether any error was prejudicial." (*Crouch*, at p. 1018.)

## A.   *Photographs Taken By Ms. Sadiq*

### 1.   *Additional Background*

In an attempt to persuade jurors they should hold Cox partially responsible for the crash, Sadiq argued that Cox "t-boned" him by running into the side of his car, a type of collision he contended was the result of Cox's failure to pay attention. The evidentiary basis for this theory included testimony that Cox told a friend shortly after the accident that he had run into Sadiq's car. It also included Sadiq's testimony that the only damage the collision caused to his car was to its rear driver's side door. For his part, Cox could not recall whether he ran into the side of Sadiq's car.

Sadiq sought to bolster his theory with photographs taken by his wife that purportedly showed the rear-door damage he described.[2] According to Sadiq's counsel, Ms. Sadiq happened to recall during trial that she visited the scene shortly after the accident and used her Android phone to take pictures of her husband's car. Since the accident, Sadiq's attorney represented, Ms. Sadiq changed to an iPhone that did not have the ability to access the photos

---

[2]    These photos are not in the appellate record.

4

on her Android phone. During trial, Ms. Sadiq somehow was able to retrieve the photos from her Android accounts. Sadiq disclosed the pictures to Cox the day before he sought to admit them into evidence.

Cox objected in part based on the trial court's "general order" that "all timely propounded discovery, not timely responded to before the discovery cutoff will be excluded at trial." Prior to receiving these photos, Cox's attorney was unaware that Ms. Sadiq had visited the scene of the accident. This was significant, he contended, because Sadiq omitted her from his verified response to an interrogatory seeking the name and contact information for anyone "who witnessed the incident or the events occurring immediately before or after the incident." Consequently, Ms. Sadiq was not deposed. Counsel also contended that the photos should have been produced in response to Cox's request for production of pictures of the damage to Sadiq's vehicle (RFP No. 5). Sadiq responded to this request by stating that "[a]fter a reasonable and diligent search, [he] no longer has possession, custody, or control of any photographs that are responsive to this request."

Citing its "local, local" rule 25, described by Cox's attorney as a "general order," the judge excluded the photographs. She also noted that Cox's interrogatory concerning the identities of percipient witnesses were timely propounded and that Ms. Sadiq was improperly omitted from Sadiq's response.

Postverdict, Sadiq moved for a new trial on the theory that the photos were "newly discovered evidence" that "might have altered the entire determination of fault." The court denied Sadiq's motion on two grounds: (1) he "failed to meet his burden of showing that the purported errors outlined in the moving papers were prejudicial," and (2) he "was not reasonably diligent in obtaining and producing the photos taken by his wife."

5

2.    *The photos were properly excluded.*

Sadiq claims the court erroneously excluded these photographs because they were not "withheld willfully or in violation of a court order compelling a response," and, as a result, he was "deprived of the opportunity to demonstrate that his car had been struck by Mr. Cox driving his motorcycle without due care and who should have born some degree of liability for his own negligence." He states that these pictures were "the only photographic depiction available to either party" that supported his theory that Cox was partially to blame for the accident. Cox counters that the sanction was an appropriate exercise of the court's discretion.

The Civil Discovery Act (the Act) (§ 2016.010 et seq.) authorizes sanctions for "[f]ailing to respond to or submit to an authorized method of discovery," "[m]aking an evasive response to discovery," and other forms of discovery "misuse[]." (§ 2023.010, subds. (d) & (f).) Available remedies include monetary, issue, termination, or evidence sanctions, the latter of which "prohibit[] any party engaging in the misuse of the discovery process from introducing designated matters in evidence." (§ 2023.030, subd. (c).) Discovery misuse occurring before trial generally must be addressed through the procedures provided in the statute authorizing the corresponding method of discovery. (*City of Los Angeles v. PricewaterhouseCoopers, LLP* (2024) 17 Cal.5th 46, 61–63 (*PricewaterhouseCoopers*).) This means that in most circumstances of pretrial discovery misuse, an evidence sanction may be imposed only after the violation of an order compelling compliance with discovery. (*Ibid.*)

But not "every act of discovery misconduct is covered by the discovery method chapters." (*PricewaterhouseCoopers*, *supra*, 17 Cal.5th at p. 71.) Accordingly, "[a] court may invoke its independent authority to impose

6

sanctions under sections 2023.010 and 2023.030 . . . when confronted with an unusual form of discovery abuse, or a pattern of abuse, not already addressed by a relevant sanctions provision." (*PricewaterhouseCoopers*, at p. 74.) Of note, the Act "does not deal explicitly with the situation where false discovery responses are not uncovered until the time of trial." (Weil & Brown, Cal. Prac. Guide: Civil Procedure Before Trial (The Rutter Group 2025) § 8:2390.) In this circumstance, an evidence sanction under section 2023.030, subdivision (d) may be imposed when discovery misuse first comes to light during trial. (See, e.g., *Pate v. Channel Lumber Co.* (1997) 51 Cal.App.4th 1447, 1455 (*Pate*).) In addition, a trial court's " 'inherent power to curb abuses and promote fair process extends to the preclusion of evidence' at trial. [Citation.] Accordingly, 'trial courts regularly exercise their "basic power to insure that all parties receive a fair trial" by precluding evidence' " as did the trial judge in this case. (*Reales Investment, LLC v. Johnson* (2020) 55 Cal.App.5th 463, 471.)

The imposition of an evidence sanction here was well within the court's discretion. The court correctly observed that Ms. Sadiq's identity as a percipient witness was plainly called for by Cox's interrogatory. Had Sadiq provided a complete response, Cox could have deposed her and learned of the existence of the photographs. Moreover, the photographs themselves should have been produced in response to RFP No. 5 because a genuine "reasonable and diligent" search by Sadiq undoubtedly would have turned up relevant pictures taken by his wife. Sadiq's failure to comply with his discovery obligations subjected Cox to a "trial by ambush" the rules of discovery are meant to prevent. (*Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 781 (*Deyo*).) Thus, the exclusion of the photographs was "virtually the only option

7

available . . . to redress the disadvantage caused plaintiff by defendant's abuse of discovery procedures." (*Pate, supra,* 51 Cal.App.4th at p. 1455.)

It is true, as Sadiq points out, that there was neither a court order compelling discovery that he could have violated nor an express finding by the court that he willfully withheld Ms. Sadiq's name and the photographs.[3] We are not persuaded, however, that a party who has no reason to question the completeness of a discovery response must file a motion to compel to establish a right to an evidence sanction if it learns *at trial* that discovery response is incomplete. (See *Pate, supra,* 51 Cal.App.4th at p. 1456 ["Defendant has cited no case which holds a party who has received repeated assurances that all relevant documents have been produced must nonetheless file a motion to compel further responses in order to establish a right to sanctions should it turn out the assurances were false"].)

It is also true that a willful failure to comply with a discovery obligation is " ' "absolutely prerequisite" ' " to the imposition of a discovery sanction. (*Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1545.) But because "we presume the court's order is correct and indulge all presumptions and intendments in its favor on matters as to which the record is silent," we must conclude that the court believed Sadiq's omission was willful. (*Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1217; see also *Valencia v. Mendoza* (2024) 103 Cal.App.5th 427, 448 [implying willfulness for evidence sanction where record was silent].) Drawing this inference is not a stretch, as Sadiq was no doubt aware of the court's general order, and deeming a

---

3    Sadiq cites *Saxena, supra,* 159 Cal.App.4th at pages 332–333 for the proposition that sanctions are not appropriate when an interrogatory response is complete and accurate when served. But the trial court found, and we confirm, that his response to Cox's interrogatory seeking the identity of percipient witnesses was *not* complete and accurate when served.

violation willful means only that "the party understood his obligation, had the ability to comply, and failed to comply." (See *Deyo*, *supra*, 84 Cal.App.3d at p. 787.)

Sadiq's theories of prejudice would fail in any event. Even without these pictures, he was able to argue his theory that Cox was contributorily negligent based on his own percipient and largely undisputed testimony as to the location of the damage to his vehicle. In the end, it made little difference whether Sadiq's car hit the motorcycle or Cox's motorcycle hit the car in light of the undisputed evidence showing Cox collided with the car that Sadiq, while asleep, drove into an intersection against a red light in an accident for which he testified Cox bore no responsibility.

3.   *The photos were not newly discovered evidence.*

A new trial may be ordered based on "[n]ewly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial." (§ 657, subd. (4).) Sadiq claims the excluded photographs were "newly discovered evidence" that could not have been produced in time to use them at trial because they were "held by a non-party" and "had not been directly requested in discovery." Cox counters that the pictures were neither newly discovered, diligently sought, nor anything other than cumulative of other evidence describing that Cox's motorcycle ran into Sadiq's car.

We can dispense with this claim in short order. As the party moving for a new trial on this ground, Sadiq must establish the elements of section 657, subdivision (4) through affidavits.[4] (§ 658; *Wall Street Network, Ltd. v.*

---

4       Sadiq suggests that the photos were newly discovered because his attorney was not aware of them until trial. But "[f]acts that are within the knowledge of the defendant at the time of trial are not newly discovered even

*New York Times Co.* (2008) 164 Cal.App.4th 1171, 1192.)  Neither Sadiq nor his wife submitted one concerning the photographs, and thus failed to describe their efforts to locate them or explain why they could not be located sooner.  (*In re Marriage of Liu* (1987) 197 Cal.App.3d 143, 154 ["The moving party must state the particular acts or circumstances which establish [reasonable] diligence"].)  Moreover, even were we to excuse that procedural deficiency, the record is devoid of any facts that could establish a diligent effort by Sadiq to find the photos before trial had begun.  Thus, the court's dispositive finding of a lack of reasonable diligence—which we review for substantial evidence (*Minnegren v. Nozar* (2016) 4 Cal.App.5th 500, 514, fn. 7)—must be upheld.

## B.  *Cox's Blood Alcohol Content*

### 1.  *Additional Background*

The paramedics who arrived at the scene took Cox to a trauma center. An excerpt of a medical record generated at the center states that "initial lab results" revealed that he had a BAC of 0.019.  Based on this information, an expert retained by Sadiq opined that Cox's BAC would have been between 0.03 and 0.04 at the time of the accident.  According to this expert, that was a "relatively low level of alcohol . . .unlikely to cause any significant impairment."  Neither the paramedics nor the sheriff's deputy who responded first to the scene had any reason to think Cox had been drinking or was under the influence at the time of the collision.

---

though he did not make them known to his counsel until later."  (*People v. Greenwood* (1957) 47 Cal.2d 819, 822.)

Cox moved in limine to exclude evidence related to his BAC under a variety of theories, including Evidence Code section 352.[5] In response, Sadiq limited his use of the evidence to impeach testimony he expected Cox to give concerning how much alcohol he had consumed before the accident. Sadiq represented that Cox testified during his deposition and stated in an amended interrogatory response that he drank only "one light beer a few hours before the incident." The expert was expected to testify that the BAC measured at the trauma center was inconsistent with those statements. The court granted Cox's motion for the reasons stated in a tentative ruling that was made prior to the hearing and that is not included in the appellate record.

2.    *The court properly excluded evidence of Cox's BAC.*

Sadiq contends that the trial court erred in precluding his use of evidence to impeach Cox if he were to testify that he had only one beer on the day of the accident. In Sadiq's view, this ruling prejudiced him because it deprived him of "key evidence in support of his comparative liability defense" because the ability to impeach Cox on this point may have led jurors to question the veracity of his other testimony. For his part, Cox maintains that the testimony about his BAC was properly excluded because it concerned a "collateral" matter.

This claim is doomed by Sadiq's failure to provide an adequate record on appeal. Because the tentative ruling the court adopted in granting Cox's motion is not in the record before us, we have no reasoning to review. As

---

[5]    "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

the appellant, Sadiq " ' "has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [him]." ' " (*Bowser v. Ford Motor Co.* (2022) 78 Cal.App.5th 587, 610.) We therefore reject Sadiq's contention for this reason alone.

In any case, based on what we can glean from the record, Cox is correct that Sadiq's planned use of the BAC evidence concerned a collateral matter, that is, one " 'that has no relevancy to prove or disprove any issue in the action.' " (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9.) Although collateral matters are generally admissible for impeachment purposes, "[a] party may not cross-examine a witness upon collateral matters for the purpose of eliciting something to be contradicted." (*People v. Lavergne* (1971) 4 Cal.3d 735, 744.) Ultimately, the trial court must exercise its discretion in deciding whether to permit impeachment on a collateral matter (*People v. Mayfield* (1997) 14 Cal.4th 668, 748), and here there is no showing that the court abused its discretion by excluding the BAC evidence.[6]

## C.    *Ms. Sadiq's Contact With Jurors*

### 1.    *Additional Background*

Throughout the trial, the judge admonished the 12 sworn and two alternate jurors not to talk about the case with anyone. One of the jurors reported that Ms. Sadiq had talked her and that it made her "uncomfortable." After consulting with the attorneys, the court spoke to Ms. Sadiq outside the

---

[6]    Sadiq focuses his argument on the prejudice he perceives this ruling caused. But he fails to articulate why the ruling was erroneous, which is the required first step of our analysis. (*Saxena, supra,* 159 Cal.App.4th at p. 332.)

presence of the jury. She admitted to talking to some jurors but stated that she had only remarked about the snacks that had been provided.

Counsel for the parties agreed it was appropriate for the court to speak to the jurors individually. Sadiq's attorney, however, urged the court to avoid making them "feel any type of way negatively about [Ms. Sadiq], . . . or more importantly, about her husband who is the actual defendant in this case." The court spoke to each of the 14 jurors individually to determine whom Ms. Sadiq had spoken to and what they talked about. The judge did not identify who Ms. Sadiq was or characterize her contact with the jurors as wrong or improper.

During this initial inquiry, five sworn jurors reported exchanges initiated by Ms. Sadiq about topics unrelated to the substance of the case, such as how long the trial would last, the jurors' attire, and the weather. One juror also said that Ms. Sadiq asked her to watch her children for a moment. Only two of these five jurors knew that Ms. Sadiq was the defendant's wife.

The court spoke again to four jurors whose interactions with Ms. Sadiq it characterized as "problematic." While being individually addressed a second time, the jurors confirmed they could remain impartial even after the court disclosed that the woman they were talking about was Sadiq's wife. Although the court invited counsel to ask questions, Sadiq's attorney chose not to.

Sadiq made an oral motion for a mistrial on the belief that the jurors with whom his wife had interacted may think that she was trying to influence the jury on his behalf. For his part, Cox asked the court to admonish the jury that Ms. Sadiq's actions were improper and to exclude her from the courtroom. The court denied Sadiq's motion for a mistrial and

Cox's request to admonish the jury, but it did exclude Ms. Sadiq from the proceedings.

Following the verdict, Sadiq moved for a new trial for "irregularity in the proceedings" under section 657, subdivision (1), arguing that the court's handling of the situation "was well-intentioned but ultimately imperiled a fair trial." The court denied the motion because Sadiq "failed to meet his burden of showing that the purported errors outlined in the moving papers were prejudicial and impacted the result of the trial."

2. *The trial judge appropriately handled the matter of Ms. Sadiq's improper contact with jurors.*

Sadiq claims that the trial court caused the jury to be biased against him. He argues, without citation to any evidence, that "[t]he implication imparted to the jurors by the one-on-one questioning was to suggest that the defendant's wife was attempting to curry favor with the jurors and that was categorically bad, and that conduct amounted to tampering with the jury— potentially impugning [his] motives or character by association." Thus, he claims, the trial court erred in denying his motion for a mistrial and in denying his subsequent request for a new trial. For his part, Cox believes that Ms. Sadiq's contact with the jurors was improper, but he points out that Sadiq's argument as to how the jurors reacted to the inquiries is "pure speculation."

"Civil litigants are constitutionally entitled to a fair trial before an unbiased jury." (*Nissan Motor Acceptance Cases* (2021) 63 Cal.App.5th 793, 821.) To this end, "[a] mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction." (*People v. Haskett* (1982) 30 Cal.3d 841, 854.) Additionally, a litigant may move for a new trial for "[i]rregularity in the proceedings of the court" (§ 657, subd. (1)), including an " 'overt act of the judge which prevents the complaining party

14

from having a fair and impartial trial.' " (*Schrader Iron Works, Inc. v. Lee* (1972) 26 Cal.App.3d 621, 638.)

" '[A] trial court . . . aware of *possible* juror misconduct . . . "must 'make whatever inquiry is reasonably necessary' " to resolve the matter.' " (*People v. Prieto* (2003) 30 Cal.4th 226, 274.)  "Although courts should promptly investigate allegations of juror misconduct 'to nip the problem in the bud' [Citation], they have considerable discretion in determining how to conduct the investigation." (*Ibid.*)  This includes the ability " 'to decide what specific procedures to employ including whether to conduct a hearing or detailed inquiry.' " (*Ibid.*)

We find nothing in the record to substantiate Sadiq's claim that the judge's inquiry jeopardized his right to receive a fair trial.  A juror's inability to remain impartial must appear in the record as a "demonstrable reality." (*People v. Williams* (1997) 16 Cal.4th 153, 231, internal quotation marks omitted.)  Sadiq's speculation and attorney argument that the judge caused the jury to be biased against him falls far short of this standard.  (*Ibid.*; see also § 658 [new trial motion on ground of irregularity in the proceedings must be supported by affidavits].)  What the record does reveal is that the trial judge conducted an inquiry the parties agreed was appropriate and which resulted in confirmations by the jurors whose contacts with Ms. Sadiq were potentially "problematic" that they could and would remain impartial. (*People v. Cochran* (1998) 62 Cal.App.4th 826, 831 [jurors' declarations of impartiality must be taken at "face value"].)  Sadiq gives us no reasoned basis to question their representations or how the court resolved the issue.

We therefore conclude that the court did not abuse its discretion in denying Sadiq's motions for a mistrial and for a new trial.[7]

## DISPOSITION

The judgment is affirmed. Cox shall recover his costs on appeal.

DATO, J.

WE CONCUR:

IRION, Acting P. J.

RUBIN, J.

---

[7] Sadiq suggests he is also asserting a claim that a mistrial or a new trial was required because of juror misconduct (§ 657, subd. (2)). We disregard this suggestion because a juror misconduct claim neither was raised below (*American Indian Health & Services Corporation v. Kent* (2018) 24 Cal.App.5th 772, 789), nor is supported on appeal by reasoned argument (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 276–277).