[No. B207661. Second Dist., Div. Three. Dec. 10, 2008.]

NEW ALBERTSONS, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JOHN SHANAHAN et al., Real Parties in Interest.

## COUNSEL

Horvitz & Levy, David M. Axelrad, Karen M. Bray; Wesierski & Zurek and Frank J. D'Oro for Petitioner.

No appearance for Respondent.

Ringler Kearney Alvarez, Jerome L. Ringler, Thomas A. Kearney, Thomas H. Peters; Esner, Chang & Ellis, Stuart B. Esner and Holly N. Boyer for Real Parties in Interest.

## OPINION

**CROSKEY, Acting P. J.**—This case arises from an injury suffered by plaintiff John Shanahan while shopping at a supermarket operated by New Albertsons, Inc. (Albertsons). He and his wife filed suit against Albertsons based on claims of negligence and premises liability. In this writ proceeding, Albertsons challenges the denial of its motion to withdraw an admission made in response to a request for admission and the imposition of evidence and issue sanctions for misuse of the discovery process. Albertsons had admitted that a photograph of the scene where Shanahan was found lying on the supermarket floor showed a bag of ice in the aisle. Albertsons contends its admission was mistaken and plaintiffs would suffer no substantial prejudice if the admission were withdrawn, so the denial of its motion to withdraw was error. Albertsons also contends the trial court had no authority to impose the evidence and issue sanctions absent a failure to obey an order compelling discovery, and the evidence does not support the award of sanctions.

We conclude that any doubts in ruling on a motion to withdraw or amend an admission (Code Civ. Proc., § 2033.300)[1] must be resolved in favor of the moving party. The record here does not clearly establish that Albertsons's mistake in admitting the matter was inexcusable or show that the withdrawal of the admission would substantially prejudice the Shanahans, so the policy in favor of trial on the merits compels the conclusion that the motion to withdraw the admission should have been granted. We further conclude that the court had no statutory authority to impose the sanctions absent a failure to obey an order compelling discovery[2] and that the court's inherent powers to control the litigation do not justify the sanctions in these circumstances.

---

[1] All statutory references are to the Code of Civil Procedure unless stated otherwise.

[2] As we discuss below, this case does not fall within any of the judicially recognized exceptions to that rule.

## *FACTUAL AND PROCEDURAL BACKGROUND*

### 1. *The Incident*

Shanahan and his wife, Melissa Shanahan, visited an Albertsons supermarket on the evening of December 30, 2006. He was in the snack aisle and his wife was nearby when she heard a thud about 10:30 p.m. She went to the snack aisle and found her husband lying on his back on the floor, bleeding profusely from one ear.[3] Travis St. Amant, a front-end manager, was the first store employee on the scene.

St. Amant testified as follows: He first became aware of the incident when a customer approached him at the front of the store and told him that a man had fallen and needed assistance. He told Rosa Lara, an Albertsons cashier, to call 9-1-1, and the customer escorted him to where the man had fallen. He saw a man lying on his back on the floor, bleeding from both ears. A woman was holding pads or socks against the man's head, and another woman was at the man's feet acting hysterical. The woman at the man's feet was holding a pair of cowboy boots, and the man was wearing only socks on his feet. St. Amant saw no liquid or product on the floor nearby and no shopping cart. After a short time, he went to the front of the store to confirm that Lara had called 9-1-1, determined that she had not done so, and called 9-1-1 himself. He returned to the scene and saw that another manager, Mark Panas, was present. He asked Panas whether he should photograph the scene and prepare an incident report. Panas responded that he should not. St. Amant returned to the front of the store and then went outside to await the paramedics. When he returned to the snack aisle with the paramedics, he saw a bag of ice on the floor that had not been there before. The paramedics put a neck brace on the injured man, briefly treated him, and took him away on a gurney. When they left, they carried away blood-soaked items and trash from the immediate area.

Lara testified as follows: She heard a scream, finished serving a customer, exchanged glances with St. Amant, and then saw him go to the snack aisle. She went there herself after he returned to the front of the store. She saw a woman in the snack aisle assisting an injured man on the floor while another woman paced back and forth at the man's feet. Lara looked around but saw nothing on the floor that could have caused him to fall. She returned to the front of the store after a few minutes and asked St. Amant whether an ambulance was on the way. "Yes," he replied. She returned to the snack aisle and asked the woman kneeling on the floor if ice would help. "Yes," the woman replied. Lara grabbed a white plastic Albertsons grocery bag from the

---

[3] Melissa Shanahan testified in her deposition that Shanahan was bleeding from the right ear only, while others testified that he was bleeding from both ears when they saw him a short time later.

front of the store, went to the ice bin at the coffee bar in the store, put one scoop of ice in the bag, and returned with the bag of ice. The woman on the floor placed ice on the man's forehead. He began to squirm and moan. The woman then removed the bag and tossed it aside. After the paramedics arrived, one of the paramedics moved the bag further aside. Lara then picked up and discarded the bag of ice and dried the floor there with paper towels.

Panas, the night shift manager, testified as follows: Peter Mikuljan, a bagger, notified him outside the store while he was taking a break that someone was hurt in the snack aisle. As Panas approached the snack aisle, St. Amant was walking away and talking on a cellular phone. When Panas arrived at the scene, he looked around but saw nothing on the floor that could have caused the man to fall. He also observed the soles of the man's cowboy boots, but saw no indication of what might have caused him to fall. A woman on the floor asked for somebody to get some ice. Panas walked toward the coffee bar to get ice, but saw Lara approaching with a bag of ice and so turned back. The woman on the floor placed the bag of ice under the man's neck. When the paramedics arrived, they removed the bag of ice from under his neck and kicked it away. The paramedics removed the man's boots and handed them to a woman.

Melissa Shanahan testified as follows: She and her husband had been grocery shopping in the store for about an hour when she heard a thud and then went to the snack aisle where she found her husband lying on his back with blood spurting from one ear. He appeared to be unconscious. She checked his breathing and patted his body down. She noticed that his lower left leg was wet. She did not see anything on the floor nearby. She screamed for help, ran to the next aisle, and asked a couple there to call 9-1-1. When she returned to the snack aisle, she saw a young, male Albertsons employee there. He yelled, " 'Damn it. I told those guys to clean that mess up an hour ago.' " She screamed for someone to get her something to stop the bleeding. A customer brought her a sanitary pad and a pair of socks. She applied the pad and socks to her husband's ears. She did not recall whether any other Albertsons employee arrived on the scene or whether any other customer touched her husband. She recalled, however, that no ice was brought to the scene. Her husband was wearing jeans and a shirt, but she did not recall whether he was wearing cowboy boots.

Shanahan suffered a severe brain injury. He has no recollection of the incident.

### 2. *The Complaint and Request to Preserve Evidence*

The Shanahans filed a complaint against Albertsons on January 29, 2007, alleging counts for premises liability, loss of consortium, and negligent

infliction of emotional distress. Their attorney served a letter by certified mail on Albertsons's agent for service of process, CT Corporation System, on the same date. The letter was addressed to Albertsons in care of its agent and demanded that all photographs, video recordings, and writings concerning the incident be preserved for potential use in litigation. The letter stated, in part: "We have learned that, following the slip and fall, which occurred between 9:00 p.m. and midnight, multiple photographs, including digital photographs, were taken of the accident area showing Mr. Shanahan's blood as well as the liquid in which he slipped. Demand is hereby made that all such photographs be preserved. Additionally, multiple video cameras are located in that supermarket. Demand is hereby made that all recordings be preserved which were made in that supermarket between noon, December 30, 2006, through and including 11:59 p.m. December 31, 2006. The undersigned will pay any reasonable costs associated with storing these materials through the conclusion of this litigation."

### 3. *Discovery*

The Shanahans served discovery requests in February 2007, including requests for admission, form interrogatories, and inspection demands. Request for admission No. 3 asked Albertsons to admit "that one or more employees of this responding defendant took one or more photograph(s) of the place on the PREMISES where plaintiff, John Shanahan, had a slip and fall incident on December 30, 2006, which show(s) the presence of a bag of ice in that aisle, and which photograph(s) were taken within the first three (3) hours after that slip and fall incident." Albertsons's counsel prepared a draft response denying this request. Albertsons's senior regional claims administrator, Darrin C. Wells, however, changed the response to "admit," and the response served in April 2007 admitted the request.[4]

Form interrogatory No. 12.4 asked whether Albertsons "kn[e]w of any photographs, films, or videotapes depicting any place, object, or individual concerning the INCIDENT or plaintiff's injuries? If so, state: [¶] (a) the number of photographs or feet of film or videotape . . . ." Albertsons's response served in April 2007 stated, "Yes," and stated that St. Amant had taken seven photographs of the floor after the incident.

The inspection demands included a request for the production of "[a]ll photographs or other visual or digital recordations taken or made between 12:01 a.m. December 30, 2006, and 11:59 p.m. on December 31, 2006, showing the condition of any aisle on the PREMISES." Albertsons served its

---

[4] The admission to request for admission No. 3 does not indicate whether the bag of ice arrived on the scene before or after Shanahan fell to floor.

responses in April 2007 objecting to this demand as "overbroad, burdensome and oppressive," but agreed to produce photographs of the snack aisle that were taken after the incident. Albertsons produced the seven photographs referenced in its response to form interrogatory No. 12.4, on April 20, 2007. Albertsons also produced a time-stamped "sweep log" indicating that Mikuljan had completed sweeping the entire sales floor at 10:01 p.m.

The Shanahans took the deposition of St. Amant in June 2007. He testified that he took "eight to ten" photographs of the scene after the incident using a digital camera. He then was shown the seven photographs produced in discovery and confirmed that he had taken those photographs. He also testified that the store surveillance system included 48 video cameras. He testified that he checked the cameras on the night of incident, determined that none of them viewed the snack aisle, and therefore did not view any of the recordings. He testified that the recordings were stored for six months.

The Shanahans served a second set of inspection demands in June 2007, requesting the production of "[e]ach and every photograph which shows the presence of a bag of ice in the aisle on the PREMISES where the accident involving Plaintiff, John Shanahan, occurred, and which photograph(s) were taken within the first three (3) hours after that incident occurred." Albertsons served its responses in July 2007, stating that it was "unable to comply with this demand as it has no such photographs."

The Shanahans also served a third set of inspection demands in June 2007, narrowing its request for video recordings to a four-hour time period. They requested the production of "[a]ll videotapes taken or composed in the subject PREMISES which show the subject PREMISES, or any portion thereof, at any time between 8:00 p.m. and 11:59 p.m. on December 30, 2006." Albertsons served its responses in August 2007, stating that it was "unable to produce a video tape as demanded," but agreed to produce "a CD showing portions of the subject premises in the time period demanding [sic]," and produced the compact disc at that time.

The Shanahans took the deposition of Gary A. Hansen in August and September 2007. Hansen testified that he was the onsite store director of the Albertsons branch where the incident occurred, but that he was not present at the time of the incident. He was asked, "Have you ever seen a picture showing a bag of ice at the scene of Mr. Shanahan's incident?" He responded, "I'm not sure if it's a bag of ice or if it's water. But I have seen the picture. But it's been quite a while since I've seen it." He stated further that he believed that he had seen a photograph showing a bag with fluid flowing from the bag, that it appeared that the ice had melted, and that the bag appeared to be a prepackaged, commercial bag of ice such as those available for purchase in the store.

Hansen testified that the store was equipped with 48 functioning digital video cameras covering areas inside and outside the store, and that none of the cameras viewed the snack aisle. He testified that the recordings were saved until the memory was full, and then the data was recorded over. He estimated that data would be recorded over after four to six months. He also testified that he reviewed the recordings, "Just to see what we had regarding what happened with sweeps and with the paramedics coming in and leaving the building," and that he copied onto a compact disc parts of the recorded video showing Mikuljan sweeping the floor and the paramedics entering and leaving.

Two of the paramedics testified in August and September 2007 that a bag shown on the floor of the snack aisle in one of the photographs taken after the incident appeared to be a cervical collar bag. In September 2007, Albertsons served an "amended response" (capitalization omitted) to request for admission No. 3, stating that the request was denied.

The Shanahans took the deposition of Shawn Thompson, a loss prevention manager for Albertsons, in October 2007.

### 4. *Motion for Sanctions*

The Shanahans filed a motion for discovery sanctions under section 2023.010 in February 2008, arguing that Albertsons had willfully destroyed video recordings and a photograph after the Shanahans demanded the production of that evidence. They argued that the recordings would have shown either that Lara carried a bag of ice from the coffee bar toward the snack aisle after the fall, as Albertsons maintained, or that a customer carried a bag of ice from the front of the store toward the snack aisle and left it there. They argued that the recordings also would have either corroborated or refuted Albertsons's claim that the floor throughout the store was checked and swept approximately 30 minutes before the fall. The Shanahans also argued that none of the seven photographs produced by Albertsons showed a bag of ice, that St. Amant had admitted taking eight to 10 photographs, and that Hansen had admitted seeing a photograph showing a commercial bag of ice at the scene. They argued that such a "smoking gun photograph" existed at one time and that Albertsons had willfully destroyed it.

The Shanahans argued that Albertsons had a duty to preserve relevant evidence and that an appropriate sanction for the intentional spoliation of evidence was either (1) an order establishing Albertsons's liability, or (2) an order establishing that Albertsons had notice of a dangerous condition on its property before the incident. They argued that these sanctions were appropriate despite the absence of a prior court order to preserve or produce the

destroyed evidence because such an order would be futile after Albertsons had acknowledged that the evidence was destroyed.

### 5. *Motion to Withdraw an Admission and Opposition to Motion for Sanctions*

Albertsons filed a motion to withdraw its admission to request for admission No. 3 in March 2008. Albertsons argued that the admission was the result of its mistake, inadvertence, and excusable neglect, and that it had since learned through discovery that the object shown in one of the photographs was not a bag of ice but instead was an empty cervical collar bag. Albertsons argued that the Shanahans would suffer no legally cognizable prejudice from the withdrawal of the mistaken admission because they had no right to present false evidence.

A declaration by Wells stated that he had received seven photographs of the snack aisle. He declared that at the time he reviewed the draft responses to the requests for admission, his recollection was that one of those photographs showed a bag of ice, so he changed the response to No. 3 from "deny" to "admit."

A declaration by Albertsons's attorney stated that she had prepared the draft response to request for admission No. 3 as a denial because she believed that the seven photographs taken after the incident did not show a bag of ice. She declared that it was not apparent from the complaint or the other materials in her case file that the Shanahans contended there was a commercial bag of ice on the floor before the incident, and that the change from "deny" to "admit" therefore "meant nothing to me."

Albertsons later filed additional declarations by its attorneys and by Wells and Donna Cutler. The attorneys declared that they received only seven photographs from Albertsons, that none of those photographs showed a bag of ice, that the photograph that Wells had believed to depict a bag of ice in fact showed the wrapper for a cervical collar, and that "[t]here are no other photographs." Wells also declared that he had received only seven photographs and that "[t]here are only seven photographs of the scene." Cutler declared that she was a regional claims administration clerk for Albertsons, that she received only seven photographs from the store, that she forwarded them to Wells, and that "[t]here were no other photographs." Wells declared further that he had reviewed black-and-white copies of the seven photographs at the time he verified the responses to the requests for admission and that one of them appeared to show a bag of ice.

Albertsons argued in opposition to the motion for sanctions that the evidence showed that there was no bag of ice on the floor at the time of the

fall and that there was no missing photograph. Albertsons also argued that it had no reason to preserve the video recordings because there was no recording of the snack aisle, and that it had no duty to preserve the recordings. Albertsons argued further that the court had no authority to issue the requested sanctions absent either a failure to obey an order compelling discovery or an indisputable showing of the intentional destruction of evidence.

### 6. *Opposition to Motion to Withdraw an Admission*

The Shanahans argued in opposition to the motion to withdraw an admission that it was apparent from their request for admission No. 3 that their theory of liability turned on the presence of a bag of ice. They argued that Albertsons had failed to show that its admission was the result of any excusable mistake, inadvertence, or neglect. They also argued that they would be severely prejudiced by the withdrawal of the admission because they had relied on the admission throughout most of the pendency of the action and because only five weeks remained after the date of the hearing on the motion before the scheduled trial date.

### 7. *Rulings on the Motions*

The trial court heard the two motions together on April 14, 2008. The court's tentative ruling on the motion for sanctions was to (1) preclude Albertsons from entering into evidence or referring to any part of the video recordings; (2) instruct the jury that Albertsons had destroyed the video recordings after receiving notice to preserve them and after reviewing them, and instruct the jury that it may infer that the destroyed video recordings were unfavorable to Albertsons; and (3) deny the other requested sanctions. The court's tentative ruling on the motion to withdraw an admission was to deny the motion on the grounds that Albertsons had failed to establish a mistake, inadvertence, or excusable neglect, and had "inexcusably delayed" in making the motion.

The Shanahans argued at the hearing that request for admission No. 3 referred to a commercial bag of ice that was left on the floor before the fall, rather than a grocery bag that was filled with ice and taken to the scene after the fall. They argued that Albertsons should be precluded from presenting evidence contrary to its admission as a sanction for its destruction of the video recordings. Albertsons argued in response that its admission suggested that there was a missing photograph showing a bag of ice on the floor, but that in fact, there was no missing photograph, and that the admission was an excusable mistake. The court stated, "I didn't find they have shown proof of a missing photograph." The court stated further, referring to the motion for

sanctions, "I don't know whether there is proof or not. I just don't think they have shown it in their motion."

After further argument on the motions, the court entered a minute order adopting its tentative ruling as final.[5] The order states with regard to sanctions: "Defendant is precluded from entering any portion of the security videotape into evidence, or from referring to the contents of the tape. Plaintiff is entitled to a jury instruction that defendant destroyed the tape after receiving notice to preserve it and after reviewing it, and the inferences the jury may make that the video contained evidence unfavorable to defendant."

### 8. *Motions for Reconsideration*

Albertsons promptly filed motions for reconsideration of both the denial of its motion to withdraw an admission and the ruling on the motion for sanctions. The motions were supported by the transcript of an audio recording of a statement by Patricia Stark in response to questions by a private investigator, and other evidence.

Stark stated as follows: She was the woman who first assisted Shanahan before the paramedics arrived. She heard a woman scream and found a man lying on his back on the floor in the snack aisle, bleeding and with a woman standing over him. He was breathing but was moving in and out of consciousness and said that he felt really hot. She asked the woman if the man was diabetic and what his health problems were, and the woman responded that he just fell. She saw no liquid on the floor or anything else that would have caused him to fall and believed that he had some health problem and had fainted or passed out. She asked someone to get some ice. A store employee brought her ice, which she placed on the injured man's head. She believed that he was dying and only tried to provide him some comfort. In response to the question, "Did any employee say anything to you that there had been, that they had knowledge of something being spilled on the floor in that area prior to his fall?" she stated "No."

The statement bore Stark's signature at the bottom. The words, "I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct" (§ 2015.5), or words to that effect, did not appear above the signature line. The statement, however, included the question, "And did you answer the questions and make your statements

---

[5] We take judicial notice of the minute order entered on April 14, 2008. (Evid. Code, § 452, subd. (d).)

truthfully to the best of your knowledge and ability under penalty under the laws of the State of California?" and the answer, "Yes."[6]

Albertsons argued that the Stark statement was newly discovered evidence because her whereabouts were unknown before the hearing on the motion for sanctions, despite its efforts to locate her. Albertsons argued that the Stark statement showed that the floor was clean before the fall, that there was no commercial bag of ice at the scene, and that there was no destruction of evidence of such a bag of ice and no coverup by Albertsons. The Shanahans opposed both motions for reconsideration. They filed a declaration by Stark stating that she could not be certain whether there was or was not ice, water, or anything else on the floor.

### 9. *Petition for Writ of Mandate*

Albertsons filed a petition for a writ of mandate in this court on May 7, 2008, after filing the motions for reconsideration but before the hearing on those motions. We stayed the trial but did not stay any other trial court proceedings. We later issued an order to show cause.

### 10. *Rulings on the Motions for Reconsideration*

The trial court granted the motions for reconsideration on May 15, 2008, and reconsidered its prior rulings in light of the evidence presented on the motions for reconsideration. Albertsons's counsel argued that the basis for the court's prior rulings was an implied finding that there was a commercial bag of ice on the floor before the incident and that Albertsons had destroyed a photograph of that bag of ice. The court stated that it had made no such finding. The court stated to Albertsons's counsel, "So far as the court is concerned, I don't think you proved there was no bag of ice on the floor; I don't think they proved there was a bag of ice on the floor." Upon reconsideration, the court confirmed its prior rulings.

### CONTENTIONS

Albertsons contends (1) the evidence shows that the admission was a mistake, and plaintiffs failed to show that they would be substantially prejudiced by its withdrawal, so the denial of the motion to withdraw was error; (2) the trial court had no authority to impose evidence and issue sanctions absent a failure to obey an order compelling discovery; (3) the evidence does not support the finding that Albertsons destroyed the video

---

[6] We need not decide whether the signed statement is admissible evidence.

recordings after receiving a request to preserve them and after reviewing them; and (4) the issue sanction is unduly harsh.

The Shanahans dispute each of these arguments and contend Albertsons has not shown that the trial court abused its discretion and we are bound by its express and implied factual determinations.

## DISCUSSION

### 1. *Code of Civil Procedure Section 2033.300*

■ Any matter admitted in response to a request for admission is conclusively established against the party making the admission for purposes of the pending action, unless the court permits a withdrawal or amendment of the admission under section 2033.300. (§ 2033.410, subd. (a).) A party may withdraw or amend an admission made in response to a request for admission only with leave of court granted after notice to all parties. (§ 2033.300, subd. (a).)

"The court may permit withdrawal or amendment of an admission only if it determines that the admission was the result of mistake, inadvertence, or excusable neglect, and that the party who obtained the admission will not be substantially prejudiced in maintaining that party's action or defense on the merits." (§ 2033.300, subd. (b).)

"The court may impose conditions on the granting of the motion that are just, including, but not limited to, the following:

"(1) An order that the party who obtained the admission be permitted to pursue additional discovery related to the matter involved in the withdrawn or amended admission.

"(2) An order that the costs of any additional discovery be borne in whole or in part by the party withdrawing or amending the admission." (§ 2033.300, subd. (c).)

Section 2033.300 eliminates undeserved windfalls obtained through requests for admission and furthers the policy favoring the resolution of lawsuits on the merits. (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 983 [90 Cal.Rptr.2d 260, 987 P.2d 727] [applying former § 2033, subd. (m)].)

■ The statutory language "mistake, inadvertence, or excusable neglect" (§ 2033.300, subd. (b)) is identical to some of the language used in section 473, subdivision (b). Section 473, subdivision (b) states that a court may

"relieve a party . . . from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." The use of identical terms in two different statutes serving similar purposes suggests that the Legislature intended those terms to have the same meaning in both statutes.[7] (See *Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233, fn. 5 [211 Cal.Rptr. 416, 695 P.2d 713] (*Elston*).) Moreover, the legislative history of former section 2033, subdivision (m), the predecessor of section 2033.300, suggests that the Legislature intended "mistake, inadvertence, or excusable neglect" to have the same meaning in the statute as those terms have in section 473, subdivision (b).[8]

*Elston, supra,* 38 Cal.3d 227, involved a motion under section 473 to set aside admissions. The matters were deemed admitted under former section 2033, subdivision (a) as a result of the plaintiff's failure to timely respond to requests for admission. The plaintiff moved for relief under section 473 on the grounds of " 'mistake, inadvertence, surprise or excusable neglect.' " (*Elston,* at p. 231.) The trial court denied the motion, and the defendant successfully moved for summary judgment. (*Elston, supra,* at pp. 231–232.)

■ *Elston* stated that a motion for relief under section 473 is committed to the discretion of the trial court, "[h]owever, the trial court's discretion is not unlimited and must be ' "exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' [Citations.]" (*Elston, supra,* 38 Cal.3d at p. 233.) *Elston* stated further, "because the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default [citations]." (*Ibid.*)

*Elston* explained that the trial court's discretion to deny a motion for relief under section 473 based on the failure to establish excusable neglect is

---

[7] We note that unlike section 473, subdivision (b), section 2033.300 does not include the term "surprise." Accordingly, our conclusion with respect to the common meaning of "mistake," "inadvertence," and "excusable neglect" as used in the two statutes is limited to those particular terms.

[8] The Reporter's Notes to the Proposed Civil Discovery Act of 1986, prepared by the State Bar-Judicial Council of California Joint Commission on Discovery, page 104, states: "A recent California case has recognized that a trial court has discretion under the present statute to permit withdrawal or amendment of an admission. Jahn v Brickey (1985) 168 Cal.App.3d 399, 404 [214 Cal.Rptr. 119]. The proposed subdivision articulates this power, and then sets guidelines for determining when and under what conditions it should be exercised." *Jahn* held that a trial court had the discretion under section 473 to allow a party to amend an admission made in response to a request for admission. (*Jahn, supra,* at p. 404.) The Reporter's Notes " 'are entitled to substantial weight' " in construing the discovery statutes proposed by the commission. (*Wilcox v. Birtwhistle, supra,* 21 Cal.4th at p. 980.) It appears that in borrowing language from section 473, the commission and the Legislature intended that the same standard from that statute would apply to a motion to withdraw or amend an admission under the new statute.

limited to circumstances where "inexcusable neglect is clear": "Where, as here, the trial court denies the motion for relief from default, the strong policy in favor of trial on the merits conflicts with the general rule of deference to the trial court's exercise of discretion. [Citation.] *Unless inexcusable neglect is clear, the policy favoring trial on the merits prevails.* [Citation.] *Doubts are resolved in favor of the application for relief from default* [citation], *and reversal of an order denying relief results* [citation]. *Reversal is particularly appropriate where relieving the default will not seriously prejudice the opposing party.* [Citations.]" (*Elston, supra,* 38 Cal.3d at p. 235, italics added.) *Elston* concluded that the plaintiff's failure to timely respond to the requests for admission was excusable and that the defendants had suffered no prejudice as a result of the tardy responses, and therefore concluded that the denial of the motion for relief was an abuse of discretion. (*Id.* at pp. 235–236, 238.) Thus, although the party moving for relief under section 473 has the burden to show that the mistake, inadvertence, surprise, or neglect was excusable (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258 [121 Cal.Rptr.2d 187, 47 P.3d 1056]), any doubts as to that showing must be resolved in favor of the moving party. (*Elston, supra,* 38 Cal.3d at p. 235.)

■ Section 2033.300, subdivision (b) differs from the discretionary provision in section 473, subdivision (b) in that the former requires not only a showing of "mistake, inadvertence, or excusable neglect," but also a showing that "the party who obtained the admission will not be substantially prejudiced in maintaining that party's action or defense on the merits" (§ 2033.300, subd. (b)).[9] Under the discretionary provision in section 473, subdivision (b), in contrast, the absence of substantial prejudice is an important factor to consider rather than a requirement. (*Elston, supra,* 38 Cal.3d at p. 235.) Notwithstanding this difference between the two statutes, and other differences that are not relevant here, we derive the following rules from *Elston, supra,* 38 Cal.3d at page 235, that we believe are fully applicable to a motion under section 2033.300.

The trial court's discretion in ruling on a motion to withdraw or amend an admission is not unlimited, but must be exercised in conformity with the spirit of the law and in a manner that serves the interests of justice. Because the law strongly favors trial and disposition on the merits, any doubts in applying section 2033.300 must be resolved in favor of the party seeking relief. Accordingly, the court's discretion to deny a motion under the statute is limited to circumstances where it is clear that the mistake, inadvertence, or

---

[9] A court ruling on a motion to withdraw or amend an admission may avoid substantial prejudice in many cases by imposing conditions on the granting of the motion, as provided under section 2033.300, subdivision (c).

neglect was inexcusable, or where it is clear that the withdrawal or amendment would substantially prejudice the party who obtained the admission in maintaining that party's action or defense on the merits.

### 2. The Denial of the Motion to Withdraw Was an Abuse of Discretion

Wells stated in his declaration filed in support of the motion to withdraw that he changed the draft response to request for admission No. 3 from "deny" to "admit" because he believed that one of the seven photographs showed a bag of ice. The photograph that he identified, a black-and-white copy of which was attached to his declaration, shows what appears to be an empty, clear plastic bag on the floor. In our view, his mistake in believing and admitting that the photograph "show(s) the presence of a bag of ice in that aisle," as stated in the request for admission, was at least arguably excusable. This is true particularly in light of the fact that it was not until several months after the original admission that the paramedics testified that the bag probably was a cervical collar bag. Although Albertsons and its attorneys, as of the date the response to the request for admission was served, had reason to believe that the bag shown in the photograph was not a bag of ice and had reason to understand the significance of the admission, it cannot be said that the mistaken admission was clearly inexcusable.

The record here refutes the Shanahans' argument that the withdrawal of the admission would substantially prejudice their case on the merits.[10] The Shanahans vigorously pursued discovery concerning the condition of the floor in the snack aisle even after the admission and have failed to explain what additional discovery they would have pursued absent the admission. Moreover, the trial court has the discretion to allow additional discovery on the issue, continuing the trial if necessary, or impose other conditions on the granting of the motion (§ 2033.300, subd. (c)) so as to avoid any possible prejudice. To the extent that the denial of the motion to withdraw was based on "inexcusable delay" in making the motion, the ruling was error because delay alone without a showing of substantial prejudice cannot justify the denial of a motion under the statute.

We conclude that the record does not clearly establish that the mistake in admitting the matter was inexcusable or show that the withdrawal of the admission would substantially prejudice the Shanahans. We therefore conclude that the policy in favor of trial on the merits compels the conclusion that the motion to withdraw the admission should have been granted. The trial court may impose such conditions on the granting of the motion as are just, pursuant to section 2033.300, subdivision (c).

---

[10] The trial court did not find that the Shanahans would be substantially prejudiced in maintaining their case on the merits if the admission were withdrawn.

### 3. *The Evidence and Issue Sanctions Are Unauthorized*

#### a. *Standard of Review*

We review an order imposing discovery sanctions under the abuse of discretion standard. (*Britts v. Superior Court* (2006) 145 Cal.App.4th 1112, 1123 [52 Cal.Rptr.3d 185].) An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479 [243 Cal.Rptr. 902, 749 P.2d 339]; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193]; *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr. 704].) The abuse of discretion standard affords considerable deference to the trial court, provided that the court acted in accordance with the governing rules of law. " 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown. [Citation.]' [Citations.]" (*Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355 [188 Cal.Rptr. 873, 657 P.2d 365].) A decision "that transgresses the confines of the applicable principles of law is outside the scope of discretion" and is an abuse of discretion. (*City of Sacramento, supra*, at p. 1297.)

#### b. *Statutory Framework*

■ A court, after notice and an opportunity for a hearing, may impose sanctions on a party, person, or attorney for misuse of the discovery process. (§ 2023.030.) Section 2023.030 describes the types of sanctions that a court may impose, including monetary, issue, evidence, terminating, and contempt sanctions. (*Id.*, subds. (a)–(e).) An issue sanction is an order that designated facts are deemed established in favor of the party adversely affected by the misuse of the discovery process, or an order prohibiting the sanctioned party from supporting or opposing designated claims or defenses. (*Id.*, subd. (b).) An evidence sanction is an order prohibiting designated matters from being introduced in evidence. (*Id.*, subd. (c).)

Section 2023.030 authorizes a court to impose the specified types of sanctions, "[t]o the extent authorized by the chapter governing any particular discovery method or any other provision of this title." (*Ibid.*) This means that the statutes governing the particular discovery methods limit the permissible sanctions to those sanctions provided under the applicable governing statutes. (*London v. Dri-Honing Corp.* (2004) 117 Cal.App.4th 999, 1005–1006 [12 Cal.Rptr.3d 240] (*London*) [applying former § 2023, subd. (b)]; *Zellerino v.*

*Brown* (1991) 235 Cal.App.3d 1097, 1114 [1 Cal.Rptr.2d 222] [same]; *Ruvalcaba v. Government Employees Ins. Co.* (1990) 222 Cal.App.3d 1579, 1581–1583 [272 Cal.Rptr. 541] [same]; see 2 Hogan & Weber, Cal. Civil Discovery (2d ed. 2005) Sanctions, §§ 15.1, 15.2 & 15.5, pp. 15-1 to 15-3, 15-15 to 15-17.) Some courts have held, however, that sanctions may be imposed in exceptional circumstances not specifically authorized by the statutes governing the particular discovery methods, as we discuss below.

█ The statutes governing each discovery method authorize particular types of sanctions in particular circumstances. A court must impose a monetary sanction against a party, person, or attorney who unsuccessfully makes or opposes a discovery motion, unless the court finds that the person subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust. (E.g., §§ 2030.290, subd. (c) [motion to compel a response to interrogatories], 2030.300, subd. (d) [motion to compel a further response to interrogatories], 2031.310, subd. (d) [motion to compel a further response to an inspection demand], 2031.320, subd. (b) [motion to compel compliance with an inspection demand].) The statutes state that the court may impose an issue, evidence, or terminating sanction, however, only if a party fails to obey a court order compelling discovery. (E.g., §§ 2030.290, subd. (c) [motion to compel a response to interrogatories], 2030.300, subd. (e) [motion to compel a further response to interrogatories], 2031.310, subd. (e) [motion to compel a further response to an inspection demand], 2031.320, subd. (c) [motion to compel compliance with an inspection demand].)[11]

The statutory requirement that there must be a failure to obey an order compelling discovery before the court may impose a nonmonetary sanction for misuse of the discovery process provides some assurance that such a potentially severe sanction will be reserved for those circumstances where the party's discovery obligation is clear and the failure to comply with that obligation is clearly apparent.

Sections 2031.310 and 2031.320, governing the inspection demand here at issue, state that a court "shall impose a monetary sanction" against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel a further response to an inspection demand (§ 2031.310, subd. (d)) or a motion to compel compliance with an inspection demand (§ 2031.320, subd. (b)). These statutes provide for the imposition of an issue, evidence, or terminating sanction, however, only "[i]f a party fails to obey an order

---

[11] The cited statutes also state that the court may award a monetary sanction in lieu of or in addition to an issue, evidence, or terminating sanction if the grounds for imposition of the latter sanctions are present.

compelling further response" (§ 2031.310, subd. (e)) or "[i]f a party then fails to obey an order compelling inspection" (§ 2031.320, subd. (c)).

### c. *Opinions Approving the Imposition of Nonmonetary Sanctions for Misuse of the Discovery Process Absent a Failure to Obey an Order Compelling Discovery*

Some courts, however, have held that nonmonetary sanctions for misuse of the discovery process may be imposed in certain circumstances not involving the sanctioned party's failure to obey an order compelling discovery. (*Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27 [9 Cal.Rptr.2d 396] (*Do It Urself*); *Vallbona v. Springer* (1996) 43 Cal.App.4th 1525 [51 Cal.Rptr.2d 311] (*Vallbona*); *Pate v. Channel Lumber Co.* (1997) 51 Cal.App.4th 1447 [59 Cal.Rptr.2d 919] (*Pate*); see *Williams v. Russ* (2008) 167 Cal.App.4th 1215 [84 Cal.Rptr.3d 813] (*Williams*);[12] *Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202 [45 Cal.Rptr.3d 265] (*Karlsson*); see also *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262 [26 Cal.Rptr.3d 831] (*Mileikowsky*).)

In *Do It Urself, supra*, 7 Cal.App.4th 27, the plaintiffs failed to comply with their agreement with the defendants to complete an audit and provide a written report, after obtaining a trial continuance based on a representation to the court that they would do so. After several months of delay and unfulfilled promises, the plaintiffs stated that the audit could not be completed and offered only a short summary of the accountant's preliminary findings. The trial court granted the defendants' motion to exclude any accounting evidence in support of the complaint. (*Id.* at pp. 31–33.) The Court of Appeal stated, "the record is replete with instances of plaintiffs' attempts to delay trial in this matter and withhold promised items of discovery," and concluded that the record supported the finding that the plaintiffs had willfully misused the discovery process. (*Id.* at p. 36.) *Do It Urself* acknowledged the rule that an evidence sanction may be imposed only after a party fails to obey an order compelling discovery, but concluded that the rule was inapplicable because "it is conceded that plaintiffs are unable to provide the promised items of discovery. Under the circumstances of this case, a warning to plaintiffs, in the form of a formal order to comply, would have been futile. [Citation.]" (*Id.* at pp. 35–36.)

In *Vallbona, supra*, 43 Cal.App.4th 1525, the defendants failed to formally respond to the plaintiffs' inspection demands, but produced some documents informally and represented that that they did not have other requested documents. A defendant later testified in his deposition that he had not

---

[12] *Williams, supra*, 167 Cal.App.4th 1215, is discussed in part e. below.

searched for the requested documents at the time of the inspection demands, but that he recently searched for them, was unable to find them, and believed that they had been stolen. The defendants then attempted to introduce at trial some of the documents that they had failed to produce earlier. The trial court granted the plaintiffs' motion for evidence and issue sanctions. (*Id.* at pp. 1541–1544.) The Court of Appeal concluded that the record supported the trial court's finding that the defendants had willfully misused the discovery process. (*Id.* at pp. 1545, 1547.) Quoting the above quoted language from *Do It Urself, supra*, 7 Cal.App.4th at pages 35–36, *Vallbona* then stated, "[r]equiring plaintiffs here to seek a formal order to compel defendants to comply with discovery would have been similarly futile since Dr. Springer had claimed the requested documents were stolen." (*Vallbona, supra*, 43 Cal.App.4th at p. 1546.) *Vallbona* also stated that the sanctions were properly tailored to the harm caused by the failure to timely produce the documents in response to discovery, and that imposing a lesser sanction would have forced the plaintiffs to go to trial without the benefit of the requested evidence. (*Id.* at pp. 1546, 1548.) *Vallbona* therefore concluded that the evidence and issue sanctions were justified despite the absence of a prior order compelling discovery. (*Ibid.*)

Similarly, *Pate, supra*, 51 Cal.App.4th 1447, held that the trial court's exclusion of evidence that was not produced to the plaintiff in response to discovery was justified despite the absence of a prior order compelling discovery. The defendant repeatedly assured the plaintiff that all responsive documents had been produced and apparently failed to object to the inspection demands. The defendant then sought to introduce at trial documents that had not been disclosed in discovery. The trial court concluded that the defendant's repeated assurances were knowingly false and that the only effective sanction at the time of trial was to exclude those documents. (*Id.* at pp. 1451–1454.) The Court of Appeal agreed and stated that a prior order compelling discovery was not necessary to justify the evidence sanction. (*Id.* at pp. 1455–1456.)

*Karlsson, supra*, 140 Cal.App.4th 1202, held that evidence and issue sanctions were justified based on a pattern of willful discovery abuses, including the failure to obey discovery orders. (*Id.* at pp. 1215–1216.) The discovery referee and the trial court found that the defendant had failed to produce evidence as agreed after being ordered by the court to meet and confer; failed to timely produce an appropriate person most knowledgeable on a designated issue, in violation of court orders to timely provide discovery; provided inaccurate information concerning the location and existence of responsive documents and provided accurate information only after the close of discovery, in violation of discovery orders and a prior agreement; failed to produce documents as they were kept in the ordinary course of business after being ordered to do so; and evaded discovery by producing an excessive

volume of documents without proper itemization. (*Id.* at pp. 1209–1211.) The trial court found that the defendant had failed to act in good faith, and imposed evidence and issue sanctions. (*Id.* at pp. 1211–1212.)

*Karlsson, supra,* 140 Cal.App.4th 1202, acknowledged that under the statutes governing depositions and inspection demands, "evidence and issue preclusion sanctions may be imposed only after a motion to compel is made and granted and the party to be sanctioned has failed to comply with that order. [Citations.]" (*Id.* at p. 1214.) *Karlsson* stated, however, "violation of a discovery order is not a prerequisite to issue and evidentiary sanctions when the offending party has engaged in a pattern of willful discovery abuse that causes the unavailability of evidence. [Citation.]" (*Id.* at p. 1215, fn. omitted, citing *Do It Urself, supra,* 7 Cal.App.4th 27, and *Vallbona, supra,* 43 Cal.App.4th 1525.)

In *Mileikowsky, supra,* 128 Cal.App.4th 262, the plaintiff repeatedly failed to respond to interrogatories and inspection demands and failed to comply with court orders compelling discovery. The court repeatedly imposed monetary sanctions in connection with the orders compelling discovery. After another round of discovery motions, the plaintiff stipulated to provide further responses to interrogatories and inspection demands. (*Id.* at pp. 269–273.) The stipulation stated that the defendant " 'may file a motion for sanctions, including but not limited to, issue, evidence or terminating sanctions,' " if the plaintiff did not produce discovery as stipulated. (*Id.* at p. 279.) A discovery referee concluded that the plaintiff willfully failed to comply with the stipulation and recommended that the defendants' motion for a terminating sanction be granted. The trial court adopted the recommendation and imposed a terminating sanction. (*Id.* at pp. 273–274.) The Court of Appeal acknowledged the general rule that a terminating sanction may be imposed only after a party fails to obey an order compelling discovery, but concluded that the stipulation was tantamount to a court order and that by signing the stipulation the plaintiff had waived the right to insist on a formal order compelling responses before a terminating sanction could be imposed. (*Id.* at pp. 276–279.) In light of the plaintiff's willful failure to comply with the stipulation, the prior pattern of willful discovery abuses, and the failure of the prior monetary sanctions to ensure compliance, *Mileikowsky* concluded that the terminating sanction was appropriate. (*Id.* at pp. 279–280.)

■ The general rule that we glean from these opinions is that if it is sufficiently egregious, misconduct committed in connection with the failure to produce evidence in discovery may justify the imposition of nonmonetary sanctions even absent a prior order compelling discovery, or its equivalent. Furthermore, a prior order may not be necessary where it is reasonably clear that obtaining such an order would be futile. In any event, we conclude that these opinions are distinguishable, as we explain below.

### d. *The Sanctions Here Are Not Authorized by the Discovery Statutes*

The trial court here imposed evidence and issue sanctions despite the absence of any order compelling Albertsons to produce the video recordings or the failure to obey such an order. The sanctions order (1) precludes Albertsons from entering into evidence or referring to any part of the video recordings, and (2) provides for a jury instruction that Albertsons destroyed the video recordings after receiving notice to preserve them and after reviewing them, and that the jury may infer that the destroyed recordings were unfavorable to Albertsons. The court expressly did not find that a bag of ice either was or was not on the floor before the incident and made no finding whether a photograph of a bag of ice on the floor ever existed. The basis for the award of sanctions apparently was a finding by the court that Albertsons had destroyed the video recordings after receiving a notice to produce them and after reviewing them, and a determination that Albertsons's failure to produce and its destruction of the recordings was a misuse of the discovery process.

The preclusion of evidence of any part of the video recordings is an evidence sanction. (§ 2023.030, subd. (c).) An instruction that Albertsons destroyed the recordings after receiving a notice to preserve them and after reviewing them is an issue sanction establishing those purported facts as true. (*Id.*, subd. (b).) An instruction that the jury may infer that the destroyed recordings were unfavorable to Albertsons is neither an evidence nor an issue sanction. The court apparently based that part of its ruling on Evidence Code section 413, which states, "In determining what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider, among other things, the party's failure to explain or to deny by his testimony such evidence or facts in the case against him, or his *willful suppression of evidence* relating thereto, if such be the case." (Italics added.) Thus, the ruling as to the inference instruction derives from and depends on the issue sanction establishing that Albertsons willfully suppressed evidence.

The first set of inspection demands served in February 2007 included a request for the production of "[a]ll photographs or other visual or digital recordations taken or made between 12:01 a.m. December 30, 2006, and 11:59 p.m. on December 31, 2006, showing the condition of any aisle on the PREMISES." Albertsons served its responses in April 2007, objecting to this demand as "overbroad, burdensome and oppressive," but agreed to produce photographs of the snack aisle that were taken after the incident. The Shanahans did not challenge the response at that time by filing a motion to compel a further response (§ 2031.310, subd. (a)). By failing to timely move to compel a further response, the Shanahans waived any right to compel a

further response to the demand (§ 2031.310, subd. (c)) or to compel an inspection of any documents that might have been identified in such a further response (see § 2031.320, subd. (a)). Albertsons therefore had no obligation to produce further documents responsive to the demand, including the video recordings.

Albertsons's employees testified in depositions that the video recordings were recorded over automatically in the ordinary course of business. Their testimony differed as to how long the data typically remained on the hard drive before being recorded over, ranging from 45 days to six months. The Shanahans contend the recordings were critical evidence that would have confirmed or refuted Albertsons's claim that all of the aisles were checked and swept approximately 30 minutes before the incident, and would have shown either that Lara carried a bag of ice to the snack aisle, as she testified, or that a bag of ice was left in the area before the incident. Regardless of what the video recordings would or would not have shown, however, the Shanahans waived the right to compel an inspection of the recordings by failing to move to compel a further response.

We conclude that the discovery statutes provide no basis for the sanctions imposed. Neither the failure to produce video recordings in response to the first set of inspection demands nor the destruction of the recordings in these circumstances justifies an evidence or issue sanction absent a failure to obey an order compelling discovery. Sections 2031.310, subdivision (e) and 2031.320, subdivision (c) authorize an evidence or issue sanction only if a party fails to obey an order compelling a further response or an order compelling an inspection. There was no such order here, and the Shanahans waived the right to compel a further response or inspection.

The opinions authorizing the imposition of nonmonetary sanctions for misuse of the discovery process in exceptional circumstances where the sanctioned party did not fail to obey an order compelling discovery are distinguishable and do not justify the sanctions imposed here. In *Do It Urself, supra*, 7 Cal.App.4th 27, the record supported the finding that the plaintiffs willfully failed to comply with their agreement with the defendants and their representation to the court to produce an audit report. (*Id.* at p. 36.) Here, in contrast, Albertsons never agreed to produce the video recordings and did not fail to comply with any agreement or representation to the court, let alone do so willfully. Moreover, the Shanahans waived any right to compel an inspection of the recordings by failing to timely move to compel a further response to the inspection demand. The rationale offered in *Do It Urself*, that an order to comply would have been futile because the plaintiffs were "unable to provide the promised items of discovery" (*ibid.*), is inapplicable here because Albertsons did not fail to provide any promised discovery and had no obligation to produce the recordings.

*Vallbona, supra,* 43 Cal.App.4th 1525, and *Pate, supra,* 51 Cal.App.4th 1447, are distinguishable in that the defendants in those cases made intentional misrepresentations concerning the existence or availability of responsive documents and failed to object to the inspection demands. Here, in contrast, Albertsons objected to the inspection demand and never represented that the video recordings did not exist or were not in its possession. Having failed to move to compel a further response to the inspection demand, the Shanahans cannot now challenge the merits of the objections or compel further responses and inspection. (§ 2031.310, subd. (c).) The rationale offered in *Vallbona,* that an order to comply would have been futile because the defendant "had claimed the requested documents were stolen" (*Vallbona, supra,* at p. 1546), is inapplicable here because Albertsons made no misrepresentation concerning the existence or availability of the recordings and had no obligation to produce them.

*Karlsson, supra,* 140 Cal.App.4th 1202, is distinguishable in that the finding of a pattern of willful discovery abuses in that case was based in part on the failure to obey discovery orders. Moreover, Albertsons's conduct did not constitute a pattern of willful discovery abuses for the reasons we have stated. *Mileikowsky, supra,* 128 Cal.App.4th 262, is not on point because the stipulation in that case was deemed equivalent to a court order, and the plaintiff effectively stipulated that a failure to comply with the stipulation could justify a terminating sanction.

The Shanahans also cite *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1 [74 Cal.Rptr.2d 248, 954 P.2d 511] (*Cedars-Sinai*) for the proposition that a trial court has broad authority under the discovery statutes to sanction a party for the intentional destruction of evidence. *Cedars-Sinai* held that there is no tort remedy for the intentional destruction of evidence by a litigating party. (*Id.* at p. 17.) *Cedars-Sinai* expressed a preference for remedying litigation-related misconduct by imposing sanctions in the underlying lawsuit rather than by creating a derivative tort remedy. (*Id.* at pp. 8–9.) *Cedars-Sinai* stated that other, nontort remedies available for intentional spoliation, including particularly the evidentiary inference provided by Evidence Code section 413 and discovery sanctions under former section 2023, were sufficient to deter intentional spoliation and protect the spoliation victim. (*Cedars-Sinai, supra,* at pp. 11–13.) *Cedars-Sinai* also stated that uncertainty as to what the spoliated evidence would have shown created a risk that the spoliator could be found liable for damages even if the spoliated evidence would not have changed the outcome of the underlying litigation. (*Id.* at p. 15.) *Cedars-Sinai* also expressed concern about the cost of litigating meritless spoliation claims where evidence was destroyed, not for the purpose of making it unavailable in litigation, but innocently in the ordinary course of business or pursuant to a document retention policy. (*Id.* at pp. 15–16.) For

these principal reasons, *Cedars-Sinai* concluded that the costs of recognizing a tort remedy for intentional spoliation outweighed any potential benefits. (*Id.* at p. 17.)

*Cedars-Sinai, supra*, 18 Cal.4th at page 12, stated: "[O]ur discovery laws provide a broad range of sanctions for conduct that amounts to a 'misuse of the discovery process.' (Code Civ. Proc., § 2023, subd. (b).) Section 2023 of the Code of Civil Procedure gives examples of misuses of discovery, including '[f]ailing to respond or to submit to an authorized method of discovery' (*id.*, subd. (a)(4)) or '[m]aking an evasive response to discovery.' (*Id.*, subd. (a)(6).) Destroying evidence in response to a discovery request after litigation has commenced would surely be a misuse of discovery within the meaning of section 2023, as would such destruction in anticipation of a discovery request.

"The sanctions under Code of Civil Procedure section 2023 are potent. They include monetary sanctions, contempt sanctions, issue sanctions ordering that designated facts be taken as established or precluding the offending party from supporting or opposing designated claims or defenses, evidence sanctions prohibiting the offending party from introducing designated matters into evidence, and terminating sanctions that include striking part or all of the pleadings, dismissing part or all of the action, or granting a default judgment against the offending party. Plaintiff remains free to seek these remedies in this case." (*Cedars-Sinai, supra*, 18 Cal.4th at p. 12.)

■ *Cedars-Sinai, supra*, 18 Cal.4th 1, did not hold that a court may impose an evidence or issue sanction for the intentional spoliation of evidence absent the failure to obey an order compelling discovery. The language quoted above suggested, without holding, that a party's intentional spoliation of evidence in anticipation of a discovery request or after such a request has been made would be a misuse of discovery within the meaning of former section 2023, and seemed to suggest that the full range of discovery sanctions could be available. *Cedars-Sinai* did not specifically discuss, however, whether the language "[t]o the extent authorized by the section governing any particular discovery method or any other provision of this article" in former section 2023, subdivision (b)[13] (see § 2023.030) limited the availability of nonmonetary sanctions.[14] An opinion is not authority for a proposition

---

[13] Former section 2023, subdivision (b) stated, in relevant part: "To the extent authorized by the section governing any particular discovery method or any other provision of this article, the court, after notice to any affected party, person, or attorney, and after opportunity for hearing, may impose the following sanctions against anyone engaging in conduct that is a misuse of the discovery process. . . ." (See Stats. 1987, ch. 86, § 6, pp. 305, 306.)

[14] The California Supreme Court in *Temple Community Hospital v. Superior Court* (1999) 20 Cal.4th 464, 476–478 [84 Cal.Rptr.2d 852, 976 P.2d 223], later held that there is no tort

not considered. (*Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1195 [81 Cal.Rptr.2d 521, 969 P.2d 613].)

 Moreover, we believe that the concern expressed in *Cedars-Sinai, supra,* 18 Cal.4th at pages 15–16, about meritless spoliation claims where the evidence was destroyed innocently in the ordinary course of business is an appropriate concern in this context as well. A party moving for discovery sanctions based on the intentional destruction of evidence could argue that the mere fact that the evidence no longer exists supports an inference of intentional spoliation. Rather than decide the facts with respect to the intentional destruction of evidence and impose a nonmonetary sanction on a pretrial motion in circumstances not contemplated by the discovery statutes, we believe that in most cases of purported spoliation the facts should be decided and any appropriate inference should be made by the trier of fact after a full hearing at trial.[15]

> e. *The Sanctions Here Are Not Justified by the Court's Inherent Power to Control the Litigation*

 A court's inherent power to ensure the orderly administration of justice and control the litigation before it derives from its constitutional role and is not dependent on statute. (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 267 [279 Cal.Rptr. 576, 807 P.2d 418].) The Legislature may regulate the exercise of the court's inherent powers, as long as the regulation does not materially impair the exercise of those powers. (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1103 [29 Cal.Rptr.3d 249, 112 P.3d 636].) The discovery statutes regulate the court's power to impose sanctions for misuse of the discovery process by providing for the imposition of monetary sanctions in some circumstances and specified nonmonetary sanctions in other circumstances, as we have discussed. We conclude that those statutory restrictions on the exercise of the court's inherent sanctioning power are binding unless they materially impair the court's ability to ensure the orderly administration of justice.

Courts have approved the imposition of sanctions based on a court's inherent powers in some circumstances. *Peat, Marwick, Mitchell & Co. v.*

---

remedy for the intentional destruction of evidence by a nonparty to the litigation, despite the fact that the sanctions available for misuse of discovery by a third party are limited. This suggests that the availability of the full range of discovery sanctions in all cases involving spoliation by a litigating party was neither assumed in nor essential to the holding in *Cedars-Sinai, supra,* 18 Cal.4th 1.

[15] CACI No. 204 states that if the jury finds that a party intentionally concealed or destroyed evidence, it may infer that the evidence would have been unfavorable to that party. A trial court may modify the standard instruction as appropriate in light of the circumstances. (*Cedars-Sinai, supra,* 18 Cal.4th at p. 12.)

*Superior Court* (1988) 200 Cal.App.3d 272 [245 Cal.Rptr. 873] (*Peat*) involved an accounting malpractice action in which the defendant accounting firm merged with the accounting firm that had been retained as the plaintiffs' expert witness. The plaintiffs moved to enjoin the merger or for the imposition of sanctions. (*Id.* at p. 280.) The court denied an injunction but granted in part the request for sanctions by precluding the introduction of expert testimony on certain issues. (*Ibid.*) Upon the defendant's motion for relief from that order, the court conducted several days of evidentiary hearings and made detailed findings of fact. (*Id.* at p. 281.) The trial court found that the defendant had failed to adequately protect against the disclosure of privileged information and that the plaintiffs' expert witness had misrepresented to the plaintiffs that there was no pending merger. (*Id.* at pp. 279, 281.) The trial court denied relief from the preclusion order. (*Id.* at p. 281.)

*Peat, supra,* 200 Cal.App.3d 272, concluded that the trial court had the inherent power to control the litigation before it and the discretion to preclude evidence in order to prevent the disclosure of confidential information and ensure a fair trial. (*Id.* at pp. 287–291.) *Peat* rejected the defendant's characterization of the preclusion order as a sanction for misuse of the discovery process, stating that the order instead was "a remedy for abuse of the litigation process." (*Id.* at p. 285; see also *id.* at p. 291.) In light of detailed factual findings showing the defendant's egregious misconduct, *Peat* concluded that the order was not an abuse of discretion. (*Id.* at p. 291.)

*Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736 [66 Cal.Rptr.3d 268] (*Stephen Slesinger*) involved an action for breach of a licensing agreement and fraud. The plaintiff hired a private investigator who obtained confidential documents from the defendant's private offices, trash dumpsters, and the facility of a contracted document disposal company. (*Id.* at p. 740.) The defendant moved for a terminating sanction based on that misconduct. (*Id.* at p. 750.) After an evidentiary hearing, the trial court made detailed findings of fact. (*Id.* at pp. 755–756.) The trial court found that the private investigator had taken confidential documents from several locations and that the plaintiff explicitly or implicitly had authorized those activities and attempted to conceal that misconduct. (*Ibid.*) The court concluded that a lesser sanction could not ensure a fair trial, and dismissed the action. (*Id.* at p. 756.)

*Stephen Slesinger, supra,* 155 Cal.App.4th 736, concluded that the trial court had the inherent power to control the litigation before it and the discretion to dismiss the action for deliberate and egregious misconduct if no other remedy could ensure a fair trial. (*Id.* at pp. 762, 764.) The Court of Appeal stated that the authority to impose sanctions under the discovery statutes supplemented, but did not supplant, a court's inherent power to

fashion a remedy for litigation abuse. (*Id.* at p. 763.) *Stephen Slesinger* stated that a dismissal need not be preceded by the violation of a court order, but that misconduct must be deliberate and egregious to justify a dismissal and that the trial court must consider other potential sanctions and all of the relevant circumstances before imposing such a sanction. (*Id.* at pp. 763–764.) In light of detailed factual findings concerning the plaintiff's egregious misconduct, *Stephen Slesinger* concluded that the dismissal was not an abuse of discretion. (*Id.* at pp. 767–775.)

*Williams, supra,* 167 Cal.App.4th 1215, involved the destruction of client files in a legal malpractice action. After suing his former attorney, the plaintiff obtained the files from the defendant, copied some of them, and then deposited the original files in rented storage space. The plaintiff became delinquent on his rental payments and ignored several notices from the storage facility operator that his property might be sold. The facility operator eventually destroyed the files. The defendant later propounded a request for production of the files. After objecting to the request, the plaintiff acknowledged that the files had been destroyed. (*Id.* at pp. 1218–1219.) The defendant moved for dismissal as a "discovery sanction" for the intentional destruction of evidence. (*Id.* at p. 1219.) The trial court made several factual findings "[i]n a detailed minute order," including findings that the plaintiff had intentionally caused the destruction of critical evidence and that the loss was highly prejudicial to the defendant. The trial court concluded that lesser sanctions would not cure the harm and that a terminating sanction was appropriate. (*Id.* at p. 1222.)

On appeal, the plaintiff argued that the evidence did not support the finding that the destruction was intentional or that the files were irretrievably lost, that a terminating sanction in the first instance was unwarranted, and that the defendant bore the burden of proving prejudice. (*Williams, supra,* 167 Cal.App.4th at pp. 1222, 1223.) *Williams* rejected those arguments and concluded that there was no abuse of discretion. (*Id.* at pp. 1224–1227.) *Williams* stated, "A terminating sanction is appropriate in the first instance without a violation of prior court orders in egregious cases of intentional spoliation of evidence. (*R.S. Creative, Inc. v. Creative Cotton, Ltd.* (1999) 75 Cal.App.4th 486, 497 [89 Cal.Rptr.2d 353].)"[16] (*Williams,* at p. 1223.)

Thus, *Peat, supra,* 200 Cal.App.3d 272, and *Stephen Slesinger, supra,* 155 Cal.App.4th 736, approved the imposition of nonmonetary sanctions based on

---

[16] *R.S. Creative, Inc. v. Creative Cotton, Ltd., supra,* 75 Cal.App.4th 486, affirmed a terminating sanction for misuse of the discovery process, including the violation of two court orders and a stipulation and the intentional destruction of evidence. (*Id.* at p. 496.) *R.S. Creative* stated that Code of Civil Procedure former section 2023 "authorizes terminating sanctions in the first instance in egregious cases such as this one." (*R.S. Creative, supra,* at p. 497.)

the court's inherent power to control the litigation where the trial court made detailed factual findings concerning the nature of the misconduct, demonstrating that the sanctions were necessary to remedy the misconduct and ensure a fair trial. *Williams, supra,* 167 Cal.App.4th 1215, approved a terminating sanction in similar circumstances, although *Williams* characterized the sanction as a sanction for misuse of the discovery process. Here, in contrast, the trial court expressly did not find that there was or was not a bag of ice on the floor before the incident and made no finding whether a photograph of a bag of ice on the floor ever existed. Instead, the court found only that Albertsons destroyed the video recordings after receiving a notice to produce them and after reviewing them. We conclude that this finding does not justify the sanctions imposed because the destruction of the recordings in these circumstances was not egregious misconduct and the sanctions are not necessary to ensure a fair trial. Albertsons objected to the document demands. Absent a timely motion challenging those objections and an order compelling discovery, Albertsons had no obligation to produce the recordings. Moreover, the video cameras were not directed toward the snack aisle, so the recordings would not have shown definitively whether a bag of ice was or was not on the floor before the incident. The circumstances here involve neither the failure to comply with a discovery obligation nor the destruction of particularly probative evidence. We conclude that the imposition of sanctions in these circumstances was an abuse of discretion and that the sanctions order must be vacated.

Our conclusion that the sanctions are unauthorized does not preclude an instruction that if the jury finds that Albertsons intentionally destroyed evidence, it may infer that the evidence would have been unfavorable to Albertsons. (See CACI No. 204.) Such an instruction is appropriate if there is evidence of willful suppression, that is, evidence that a party destroyed evidence with the intention of preventing its use in litigation. (*Estate of Moore* (1919) 180 Cal. 570, 585 [182 P. 285]; *County of Contra Costa v. Nulty* (1965) 237 Cal.App.2d 593, 598 [47 Cal.Rptr. 109].) If so instructed, the jury may consider all relevant and admissible evidence in determining whether evidence was willfully suppressed, including the letter requesting the preservation of evidence. In light of our conclusion, we need not address Albertsons's other contentions.

### DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to vacate its order denying the motion to withdraw an admission and granting in part the motion for sanctions, and issue a new order granting the motion to withdraw an admission and denying in full the motion for sanctions. The trial court, however, may impose such conditions on the granting of the motion to

withdraw as, in the circumstances, are appropriate, fair, and just. The order to show cause is discharged, and the stay of the trial is vacated upon the issuance of our remittitur. Albertsons is entitled to recover its costs in this appellate proceeding.

Kitching, J., and Aldrich, J., concurred.

A petition for a rehearing was denied January 5, 2009, and the petition of real parties in interest for review by the Supreme Court was denied March 25, 2009, S169891.